655 F.2d 962
 MORRISON-KNUDSEN COMPANY, INC., a Delaware Corporation,
Plaintiff- Counterdefendant-Appellee,
v.
J. D. ARCHER and Elizabeth B. Archer, as individuals and as
trustees of the Elizabeth Daly Archer Trust,
Defendants-Counterclaimants-Appellants.
 No. 79-4231.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1981.
Decided Aug. 19, 1981.
As Amended on Denial of Rehearing Dec. 2, 1981.
 
 Ryan P. Ambruster, Boise, Idaho, argued, for defendants-counterclaimants-appellants; Carl P. Burke & Phillip M. Barber, Elam, Burke, Jeppesen, Evans & Boyd, Boise, Idaho, on brief.
 John T. Hawley, Boise, Idaho, for plaintiff-counterdefendant-appellee.
 Appeal from the United States District Court for the District of Idaho.
 Before KENNEDY and BOOCHEVER, Circuit Judges, and GRAY,* District Judge.
 KENNEDY, Circuit Judge:
 
 
 1
 This case involves a routine dispute over whether a summary judgment was correct, but it also requires us to discuss the requirements that must be observed by a district court before it orders the entry of a separate judgment under Rule 54(b) of the Federal Rules of Civil Procedure. We recite only the bare outline of a controversy which involves other events and technical details that are unnecessary for the purposes of this opinion. Morrison-Knudsen Co. (M-K) formerly owned rights to mine coal from an area known as the Elk River Project in British Columbia. By a letter agreement dated October 6, 1969, M-K granted J. D. Archer, and certain other parties, all referred to here as "Archer," a 15 percent interest in the profits from the sale of that coal, in recognition of Archer's efforts in arranging the successful purchase of the reserves. The agreement conditioned the grant upon the provision that Archer contribute 15 percent of all expenses incurred in developing the project. Later, a dispute arose between the parties as to their respective rights under the agreement, in particular Archer's duty to pay his share of the expenses in developing the coal reserves. In 1973 a declaratory judgment was rendered setting forth certain rights and obligations of the parties. That judgment is final and was not appealed. The judgment confirmed that M-K had the right of ownership and control over the deposits and that Archer was obligated to contribute 15 percent of all costs and expenses.
 
 
 2
 M-K subsequently billed Archer for his share of the project costs, and when he failed to pay, M-K filed suit to recover the sums. During the course of the dispute over these sums, M-K sold the Elk River Project mining interests to an entity here called Elco. M-K retained a 4 percent royalty. M-K, allegedly in connection with the sale, also negotiated with Elco three service contracts pertaining to the development of the project. Archer then filed counterclaims against M-K alleging injury as a result of the sale. Archer claimed M-K failed to consult Archer or obtain his consent to the sale, violated its duty to exercise good faith business judgment, and breached its fiduciary duty to Archer. The parties apparently dispute, in a part of the litigation not before us here, whether Archer is entitled to receive 15 percent of the royalty payments M-K eventually derives from the sale agreement; they further dispute, for purposes here material, whether Archer is entitled to any of the profits M-K derives from the three service contracts.
 
 
 3
 M-K filed a motion for summary judgment on each of the counterclaims, relying heavily on the earlier declaratory judgment, which set forth the rights of the parties. The district court granted summary judgment for M-K and against Archer on the counterclaims which alleged that M-K breached its fiduciary duty in making the sale and that M-K failed to exercise its good faith business judgment in obtaining the highest price for the sale. In a further ruling, which gives rise to the procedural difficulty we discuss at length, the district court ordered entry of judgment for M-K on those claims under Fed.R.Civ.P. 54(b). The court reserved for trial Archer's counterclaim to establish an interest in the three service contracts. As discussed below, there is a triable issue of fact as to the dismissed counterclaims, but our analysis reveals also a procedural error in the entry of separate judgment.
 
 
 4
 In granting summary judgment, the trial court proceeded on the assumption that M-K had the duty to use its business judgment, in good faith, in the sale or other disposition of the mining interests. We agree with that conclusion as a reasonable, in fact necessary, interpretation of the declaratory judgment that is the law of this case.[1] We decide further, however, that Archer has identified a narrow inquiry which does present a triable issue of fact, and summary judgment should not have been used to foreclose that factual inquiry. The three contracts by which M-K agreed to render consulting and other services were negotiated at or about the time of the sale. The district court expressly reserved for trial the question whether Archer has an interest in those contracts, an inquiry which will entail some factual exploration. That determination may in turn bear on the question of whether M-K breached its duty to use good faith business judgment in sale negotiations. Specifically, if Archer does not share in the proceeds of the three contracts, it may be argued that M-K accepted a lower royalty to be shared with Archer because it was able to secure profitable service contracts, not subject to Archer's percentage of profits. Under such circumstances, M-K would have acted to prejudice Archer's interest without a good faith business justification for doing so. The issue is a narrow one. Archer's interest was in mining operations, and it is unlikely that the intent of the parties was to include him in any consultation or construction contract made with third persons who were to develop the deposits, provided that such contracts were entered into upon terms that were commercially reasonable and were not procured as part of the quid pro quo in making the sale. Nevertheless, as the trial court acknowledged, the interplay between the three contracts and the sale of the interests requires further factual determinations. We cannot say now, in the probable event Archer was excluded from the three contracts, that M-K necessarily was justified in making them contemporaneously with the sale of the interest.[2]
 
 
 5
 Our analysis of the close relation between the questions pertaining to the purpose and effect of the three contracts, on the one hand, and the question whether the sale transaction was an exercise of good faith business judgment, on the other, reveals a further error in these proceedings that should be explained in order to assist the district courts of this Circuit in the correct use of separate judgments as to less than all parties or claims under Fed.R.Civ.P. 54(b). As we have shown, the construction of the three contracts and their interpretation may bear directly upon whether M-K exercised its business judgment properly and whether or not it discharged properly any fiduciary duties it might have to Archer in this regard. Thus, the counterclaim that the court reserved for trial and the counterclaims upon which the court granted summary judgment were logically related, both from a factual and a legal standpoint. In such instances, it is not proper to direct entry of a separate judgment pursuant to Rule 54(b).
 
 
 6
 Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties. The trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order. Those findings should include a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court. A similarity of legal or factual issues will weigh heavily against entry of judgment under the rule, and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings.
 
 
 7
 If a judgment is entered under Rule 54(b), then, assuming the judgment has the requisite aspects of finality and that the district court has made the findings and determinations we have set forth above, appellate courts must give substantial deference to the lower court's discretion in determining whether an immediate appeal shall lie, because the lower court is " 'the one most likely to be familiar with the case and with any justifiable reasons for delay.' " Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d (1980) (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S.Ct. 895, 901, 100 L.Ed. 1297, 63 L.Ed.2d 574 (1956)).
 
 
 8
 In Curtiss-Wright, the Supreme Court noted in detail the factors underlying the district court's determination to enter separate judgment under Rule 54(b) in the case there under consideration. These are instructive.
 
 
 9
 The District Court also provided a written statement of reasons supporting its decision to certify the judgment as final. It acknowledged that Rule 54(b) certification was not to be granted as a matter of course, ... because of the overload in appellate courts which would otherwise result from appeals of an interlocutory nature. The essential inquiry was stated to be "whether, after balancing the competing factors, finality of judgment should be ordered to advance the interests of sound judicial administration and justice to the litigants."
 
 
 10
 The District Court then went on to identify the relevant factors in the case before it. It found that certification would not result in unnecessary appellate review; that the claims finally adjudicated were separate, distinct, and independent of any of the other claims or counterclaims involved; that review of these adjudicated claims would not be mooted by any future developments in the case; and that the nature of the claims was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.
 
 
 11
 446 U.S. at 5-6, 100 S.Ct. at 1464, 64 L.Ed.2d 1.
 
 
 12
 In the instant case, the district court did not, and on this record could not, make the findings and determinations which are predicates for an appropriate entry of a judgment under Rule 54(b). As our discussion demonstrates, the question whether M-K exercised good faith business judgment with respect to Archer's interest cannot be resolved adequately without knowing whether the full consideration for sale of the mining interests included the service contracts, whether Archer's interests were thereby hurt, and if so whether M-K had a business justification for negotiating the transaction in such a manner. The claims disposed of by the Rule 54(b) judgment were inseverable, both legally and factually, from claims that remained unadjudicated in the district court, and there were no unusual and compelling circumstances that otherwise dictated entry of an early, separate judgment on that part of the case. It was error, therefore, for the district court to enter the separate judgment under Rule 54(b).
 
 
 13
 There are cases, of course, when an appellate review of a particular ruling will materially advance disposition of the claims before the trial court, but in such cases the appropriate procedure for the district court is to certify its order for interlocutory appeal under 28 U.S.C. § 1292(b). Section 1292(b) provides that controlling questions of law can be certified for immediate appeal, but the mechanism permits the Court of Appeals to protect its docket by determining for itself whether to accept the issue for review. One of the principal reasons a Court of Appeals will exercise its discretion not to grant applications under section 1292(b) is the likelihood or probability of the appellate court's having to issue multiple opinions on the same or closely related issues of law or fact in the case. This discretion in the Court of Appeals should not be evaded by the device of an inappropriate entry of judgment by the district court under Rule 54(b).
 
 
 14
 In the posture of this case, we have found it appropriate to formulate some of the legal issues that will almost certainly confront the court on remand, despite our conclusion that the separate judgment was improperly entered. See Brunswick Corp. v. Sheridan, 582 F.2d 175, 184-85 (2d Cir. 1978). Those considerations, moreover, bear directly on the reasons why the judgment under Rule 54(b) was improper in the first instance.
 
 
 15
 The order granting the summary judgment is vacated and the cause remanded for further proceedings. Each party will bear its own costs.
 
 BOOCHEVER, Circuit Judge, concurring:
 
 16
 I concur separately for the purpose of expressing my views that upon remand the trial court may wish to reconsider its grant of summary judgment to M-K in light of the nature of the fiduciary duty owed to Elk Power Enterprise. Judge Taylor, in his findings, held that M-K was to exercise its business judgment "for the interest of the respective parties to the agreement." Under Idaho law, the scope of the duty owed depends upon the nature of the relationship. Compare Mallory v. Watt, 100 Idaho 119, 594 P.2d 629, 632 (1979) (real estate broker) with Beal v. Mars Larsen Ranch Corp., 99 Idaho 662, 586 P.2d 1378, 1383 (1978) (attorney). The Idaho Supreme Court has recognized that the fiduciary duty must be divided into two parts: (1) a duty of care and (2) a duty of loyalty. See, e. g., Melgard v. Moscow Idaho Seed Co., 73 Idaho 265, 251 P.2d 546, 549-50 (1952). While Judge Taylor found that there was no joint venture, the relationship here has the characteristics of either a corporation or partnership. In the corporate context, the Idaho Supreme Court has recognized that the duty of loyalty is an "undivided" one. See id. The same standard is applicable to partnerships.[1]
 
 
 17
 Here since Archer had no right to participate in management decisions, the relationship is more akin to that of a limited partnership. Yet unlike most limited partnerships, Archer was required to make contributions to the expenses of the operation. It would thus appear that the duty of loyalty owed is at least that owed by a general partner to a limited partner or that of a board of directors to the shareholders of a corporation.
 
 
 18
 With this in mind the trial court may wish to reconsider the question of triable issues of fact as to whether: (1) the decision to make the sale to Elko complied with the fiduciary duties or was based solely on M-K's financial problems without consideration of Archer's interest; (2) threats were made to Archer indicating that M-K sought to harm him by wiping out his interest in breach of the duty of loyalty; and (3) the evidence of sources of long-term contracts for sale of the coal other than Japan indicates that M-K, in making the sale to Elko, failed in its duty to exercise business judgment "for the interest of the respective parties to the agreement."
 
 
 
 *
 Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The 1973 declaratory judgment states in pertinent part:
 By the terms of the October 6, 1969 agreement, it is implicit that Morrison-Knudsen Company, Inc. is to exercise its business judgments, its ability and mining expertise in the management, operation and control of the Elk River Project for the interest of the respective parties to the agreement.
 
 
 [2]
 Various arguments he makes on appeal, moreover, are entirely without substance. The contentions that the term "we" in the letter of October 6, 1969, refers to both M-K and Archer, and that Archer's consent was necessary to complete the sale, are plainly unreasonable. The 1973 declaratory judgment makes it abundantly clear in several spots that Archer has no right to veto M-K's decision to sell the mining interests. The judgment expressly stated that Archer and M-K did not have a joint partnership relationship and that Archer had no right of ownership in the coal reserves and could not exercise any control over the management of the project. A contrary construction, moreover, would be plainly inconsistent with M-K's obligation to exercise its business judgment. We must note in addition that selective, misleading, partial quotations in the appellant's brief give us little confidence in the merits of his case
 
 
 [1]
 See generally Homestake Mining Co. v. Mid-Continent Exploration Co., 282 F.2d 787, 799 (10th Cir. 1960); Tolmie v. San Diego Fruit & Produce Co., 57 Idaho 631, 68 P.2d 61, 69 (1937). Bassan v. Inv. Exch. Corp., 83 Wash.2d 922, 524 P.2d 233, 238 (1974); Crane & Bromberg, Law of Partnership § 68, at 389 (1963); Note, Fiduciary Duties of Partners, 48 Iowa L.Rev. 902, 908 (1963)