TEXACO, INC.,
**Plaintiff-counter-claim-defendant-Appellant,**

v.

**William R. PONSOLDT,**
**Defendant-counter-claimant-Appellee.**

Nos. 90–55750, 90–56088.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1991.

Decided July 25, 1991.

Donald F. Woods, Jr., Dewey Ballantine, Los Angeles, Cal., Mark D. Litvack, White Plains, N.Y., for plaintiff-counter-claim-defendant-appellant.

Laurence D. Strick, Richman, Lawrence, Mann & Greene, Beverly Hills, Cal., for defendant-counter-claimant-appellee.

Before D.W. NELSON, O'SCANNLAIN and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Texaco appeals summary judgment in favor of William R. Ponsoldt on multiple claims arising out of an unconsummated land sale. After Ponsoldt failed to close escrow on a ranch located in Santa Barbara, California that he had contracted to purchase, Texaco sued for declaratory relief and specific performance. Failed settlement talks led to a second suit by Texaco for breach of the settlement agreement, fraud, and negligent misrepresentation. Ponsoldt filed counterclaims in both suits, which are still pending. We affirm in part and reverse in part.

## I

### Facts

Texaco and Ponsoldt entered into an agreement under which Ponsoldt agreed to pay $7 million for a large ranch (approximately 3,000 acres) on which Ponsoldt allegedly planned to raise horses. The ranch is known as El Capitan Ranch. Ponsoldt paid a $200,000 deposit to open escrow. The purchase/sale agreement contained a liquidated damages provision that provided:

> It is agreed that the seller's sole and exclusive remedy in the event of buyer's default prior to the close of escrow shall be the retention of said deposit [$200,-000] as liquidated damages.
>
> The retention of said deposit shall be seller's sole remedy for damages in the event of a default on the part of the buyer, all other claims, damages, expenses, costs and attorneys' fees being expressly waived by seller.

Two lawsuits were filed below based on the purchase/sale agreement, which were consolidated on appeal.

### a. The First Action—Breach of the Purchase Agreement

Texaco acquired El Capitan in 1981, and with the purchase assumed an obligation to homeowners in the adjoining subdivision to (1) construct a water system and (2) provide licenses for beach access. A dispute arose as to whether Texaco had performed on these obligations, and the homeowners filed claims against Texaco. Because Texaco was going through Chapter 11 reorganization, two homeowners filed proofs of claim with the bankruptcy court for a total of $3 million. Ponsoldt was informed of these claims. Ponsoldt alleges there were other claims filed against Texaco relating to the El Capitan Ranch that Texaco did not disclose to him. Texaco asserts that it disclosed all potential liability to Ponsoldt, and that Ponsoldt expressly agreed to assume Texaco's obligations relating to the production of water to serve El Capitan Ranch and adjacent properties, as well as providing licenses guaranteeing beach access to the homeowners.

At the closing, Ponsoldt refused to perform, raising the pending homeowners' claims. He filed suit in state court, asserting claims for specific performance, breach of contract, and fraud. He also filed a lis pendens against the property. Texaco filed suit in federal district court on the following day, requesting specific performance and declaratory relief. The state court stayed its action, and Ponsoldt subsequently filed counterclaims against Texaco in the district court for breach of contract, specific performance, bad faith denial of the existence of a contract, breach of the covenant of good faith and fair dealing, fraud, and negligent misrepresentation.

### b. The Second Action—Breach of the Settlement Agreement

After the above actions were filed, Texaco and Ponsoldt attempted to resolve the dispute. Texaco entered into a settlement agreement with the homeowners, agreeing to pay for improvements to the water system, record licenses in their favor for beach access, and change the composition of the Board of Directors of the El Capitan Mutu-

al Water Company to increase homeowner representation. Texaco asserts that Ponsoldt agreed to this settlement with the homeowners, to contribute $250,000 toward the payment to the homeowners, to dismiss his claims against Texaco, and to close escrow. Ponsoldt denies this, arguing that Texaco settled with the homeowners without his approval.

After this supposed settlement agreement, Ponsoldt refused to close escrow by paying the balance of the purchase price, or to dismiss his claim for specific performance and expunge the lis pendens. Texaco filed a second action against Ponsoldt, raising claims for breach of the settlement agreement, fraud, and negligent misrepresentation. Ponsoldt counterclaimed for breach of contract, specific performance, fraud, and negligent misrepresentation.

## II

### Procedural History

On April 3, 1989, Ponsoldt moved for summary judgment on Texaco's specific performance claim in the first action, raising the liquidated damages provision as a complete defense. The district court granted the motion, finding that Texaco had specifically waived its right to seek specific performance. Texaco does not appeal this ruling. Five months later, Ponsoldt moved for summary judgment on the declaratory relief claim in the first action, claiming that it was moot because the relief requested was identical to that in the specific performance claim. Ponsoldt simultaneously moved for summary judgment on all claims in the second action, asserting that the settlement agreement was unenforceable under the statute of frauds, and the fraud claims were barred because the agreement was unenforceable.

The district court granted Ponsoldt's motions. It dismissed the declaratory relief claim, holding it was moot because the specific performance claim had been dis-

missed. The court found that because the settlement agreement affected the disposition of real property, the agreement had to comply with the statute of frauds to be enforceable. Because the agreement was never signed, it was not enforceable. The claims for fraud and negligent misrepresentation were dismissed because the district court concluded they were dependent on the claim for breach of the settlement agreement.

After granting Ponsoldt's motions, the district court certified its judgment for appeal pursuant to Fed.R.Civ.P. 54(b).[1] Ponsoldt's counterclaims were not ruled upon and are still pending.

## III

### Rule 54(b) Certification

■ Texaco argues that the district court erred in certifying this appeal because Ponsoldt's pending counterclaims concern the same factual determinations as Texaco's dismissed claims. We disagree with Texaco and affirm.

This panel reviews the certification of an appeal under Rule 54(b) for abuse of discretion. *Gregorian v. Izvestia*, 871 F.2d 1515, 1520 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989). Deference is granted to the district court's decision because it is " 'the one most likely to be familiar with the case and with any justifiable reasons for delay.' " *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (9th Cir.1987) (quoting *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980) (citation omitted)).

Rule 54(b) certification is proper if it will aid "expeditious decision" of the case. *Sheehan*, 812 F.2d at 468. "The Rule 54(b) claims do not have to be separate from and independent of the remaining claims." *Id.* However, Rule 54(b) certification is scrutinized to " 'prevent piecemeal appeals in

1. Rule 54(b) provides in part that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an

express direction for the entry of judgment." The court below found "that there is no just delay [sic] in entering final judgment on Plaintiff Texaco's complaints."

cases which should be reviewed only as single units.' " *McIntyre v. United States,* 789 F.2d 1408, 1410 (9th Cir.1986) (quoting *Curtiss–Wright,* 446 U.S. at 10, 100 S.Ct. at 1466). The present trend is toward greater deference to a district court's decision to certify under Rule 54(b). *Morrison–Knudsen Co. v. Archer,* 655 F.2d 962 (9th Cir.1981), which Texaco relies upon extensively, is an outdated and overly restrictive view of the appropriateness of Rule 54(b) certification.

In *Continental Airlines v. Goodyear Tire & Rubber Co.,* 819 F.2d 1519 (9th Cir.1987), we upheld Rule 54(b) certification even though the remaining claims would require proof of the same facts involved in the dismissed claims. Continental Airlines sued McDonnell Douglas Corporation, the seller of a DC–10 airplane, and Goodyear, the supplier of defective tires that caused the DC–10 to crash. McDonnell Douglas was granted partial summary judgment on the basis of an exculpatory clause in the sale contract with Continental. The summary judgment did not reach Continental's claims for fraud or breach of warranty, or for passenger indemnification. In approving the Rule 54(b) certification, the court adopted a "pragmatic approach focusing on severability and efficient judicial administration." *Id.* at 1525. Even though the summary judgment "eliminated none of the parties and left open potentially full recovery in both of Continental's ultimate areas of loss," the appellate panel approved the lower court's effort to streamline litigation by narrowing the issues for trial, "efficiently separat[ing] the legal from the factual questions." *Id.*

We find the reasoning of *Continental* persuasive in the present case. Although the claims disposed of on appeal and the remaining counterclaims require proof of the same facts, the legal issues now appealed will streamline the ensuing litigation. Furthermore, Judge Marshall's rulings separated the legal from the factual questions. As in *Continental,* certain theories of recovery were eliminated, limiting the issues to be tried below. We hold that the judgment was properly certified for appeal under Rule 54(b).

## IV

### *Denial of Leave to Amend*

Texaco sought to amend its complaint in the first action to add claims for breach of the purchase/sale contract, and new fraud and negligent misrepresentation claims. Texaco characterizes these new claims as merely clarifying earlier claims, and as not raising any new theories. Texaco relies on the general principle that leave to amend should be liberally granted in the absence of prejudice, undue delay, or bad faith. The district court denied leave to amend without comment.

We review denial of leave to amend for abuse of discretion, " 'but such denial is 'strictly' reviewed in light of the strong policy permitting amendment.' " *Moore v. Kayport Package Express,* 885 F.2d 531, 537 (9th Cir.1989) (quoting *Thomas–Lazear v. FBI,* 851 F.2d 1202, 1206 (9th Cir.1988) (citation omitted)). Whether leave to amend should be granted is generally determined by considering the following factors: " '(1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party.' " *United States v. Pend Oreille Pub. Util. Dist. No. 1,* 926 F.2d 1502, 1511 (9th Cir.1991) (quoting *Hurn v. Retirement Fund Trust,* 648 F.2d 1252, 1254 (9th Cir.1981)).

"Undue delay is a valid reason for denying leave to amend." *Contact Lumber Co. v. P.T. Moges Shipping Co.,* 918 F.2d 1446, 1454 (9th Cir.1990). Some courts have stressed prejudice to the opposing party as the key factor. *See Pend Oreille,* 926 F.2d at 1511; *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir.1990) (citing *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971)).

Ponsoldt points out that the amended complaint raised for the first time the spectre of money damages for breach of the purchase/sale contract, whereas the original complaint requested only specific performance and declaratory relief. Furthermore, Texaco unduly delayed its attempt to amend the complaint. Texaco did not move

to amend until March 1990, eight months after the district court granted summary judgment against it, and nearly two years after filing the initial complaint. The complaint in the second action, which alleges most of the facts that Texaco relies upon in its amended complaint, was filed in February 1989, a full year before Texaco attempted to amend. *See Jackson,* 902 F.2d at 1388 (eight month delay from time of obtaining facts until filing amended complaint unreasonable). Finally, Texaco waited until after discovery was over, just four and a half months before the trial date, before moving to amend its complaint. Ponsoldt would have been unreasonably prejudiced by the addition of numerous new claims so close to trial, regardless of Texaco's argument that they were "implicit" in the previously pleaded claims. We affirm the denial of leave to amend.

## V

### Mootness of Texaco's Declaratory Relief Claim

■ The district court dismissed Texaco's declaratory relief claim, holding that it sought the same relief as the previously dismissed claim for specific performance. Texaco asserts that the district court wrongly concluded that the declaratory relief claim was mooted by dismissal of the specific performance claim. We agree.

The declaratory relief claim requested a determination that:

(1) Texaco had complied with all its preclosing contractual duties;

(2) Texaco was not obliged to deliver title free and clear of the claims filed against it;

(3) Ponsoldt must accept title;

(4) Texaco disclosed all pending claims against the property;

(5) Texaco disclosed all exceptions to the title report;

(6) Texaco disclosed the status of the beach access licenses;

(7) Texaco had performed all conditions required of it under the purchase/sale contract.

Texaco asserts that the issues raised in the declaratory relief claim are broader than those raised by the specific performance claim. The sole relief requested under the specific performance claim was that Ponsoldt be ordered to complete the purchase of the El Capitan Ranch.

Texaco argues that it needs a judicial determination that it did not breach the contract so that it can keep the $200,000 deposit as liquidated damages, and have the lis pendens expunged. Ponsoldt asserted at oral argument that he would sue for the return of the $200,000 unless Texaco obtained a formal adjudication that it was entitled to keep the deposit. Since adjudication of the specific performance claim did not settle these issues, Texaco is correct in asserting that the declaratory relief claim is not moot. We reverse the district court's dismissal of the declaratory relief claim.

## VI

### Statute of Frauds in the Second Action

Texaco makes four arguments regarding the effect of the statute of frauds on the claims it asserted in the second action: (1) the statute of frauds does not apply to settlement agreements; (2) the promises that Ponsoldt made as part of the settlement agreement are divisible, and hence at least some of them are enforceable because they do not effect the transfer of an interest in land; (3) Ponsoldt is estopped from relying on the statute of frauds because Texaco relied on his representations and Ponsoldt would be unfairly benefited; and (4) the fraud and misrepresentation claims are not barred even if the breach of settlement claim is barred.

a. *Applicability of Statute of Frauds to Settlement Agreements.*

■ The district court concluded that Texaco's breach of contract claim based on the unsuccessful settlement agreement was barred by the statute of frauds. Cal. Civ.Code § 1624(c), which codifies the statute of frauds, provides that "[a]n agreement for ... the sale of real property, or of an interest therein" is invalid unless in

writing and signed by the party to be charged. The district court found that the settlement agreement failed to comply with the statute of frauds because it was not signed·by Ponsoldt. "An out-of-court settlement agreement purporting to effect the sale or transfer of an interest in real property, to be valid and enforceable, must be in writing and subscribed by the party to be charged."

Texaco asserts that the statute of frauds is not applicable to settlement agreements, citing *Hastings v. Matlock*, 171 Cal.App.3d 826, 217 Cal.Rptr. 856 (1985). *Hastings* concerned rescission of a purchase/sale agreement, which the court found to be not covered by the statute of frauds. In so finding, however, the court stressed that the settlement agreement to rescind the contract did not effect transfer of an interest in land. The settlement agreement, which provided that the sellers would compensate the buyers for improvement to the real property, "did not contemplate a *transfer* of title to the improvements, but rather *payment* of their costs. A parol promise to pay for improvements on land is not within the statute of frauds." *Id.* at 836 (emphasis in original).

Texaco's attempt to use *Hastings* to support its contention that settlement agreements concerning land are not covered by the statute of frauds is not persuasive. Since the *Hastings* court specifically rested its holding on the fact that the settlement agreement did not effect a transfer of an interest in land, and the settlement agreement here provided that Ponsoldt would take title to the ranch, *Hastings* is inapposite. Furthermore, numerous California cases have analyzed settlement agreements to determine whether the statute of frauds applies, and none have declared a blanket exception for settlement agreements. *See, e.g., Leonard v. Rose*, 65 Cal.2d 589, 592, 55 Cal.Rptr. 916, 422 P.2d 604 (1967) (assuming settlement agreements not exempted from statute of frauds if they fall within its purview); *People ex rel. Dep't of Pub. Works v. Douglas*, 15 Cal.App.3d 814, 819, 93 Cal.Rptr. 644 (1971) (same).

### b. *Divisibility of the Settlement Agreement.*

■ The district court found that the entire settlement agreement was barred, without considering whether the agreement was divisible into discrete promises. Texaco asserts that the agreement contained five separate promises, some of which are not covered by the statute of frauds.

■ When an agreement is divisible, if some portions are not covered by the statute of frauds, those portions are enforceable. *Landes Constr. Co. v. Royal Bank*, 833 F.2d 1365, 1370 (9th Cir.1987). "California case law ... holds that when promises not within the statute of frauds are coupled with one that is, the former are enforceable if they are divisible or separable." *Id.* (citing *White Lighting Co. v. Wolfson*, 68 Cal.2d 336, 345–46, 66 Cal. Rptr. 697, 438 P.2d 345 (1968)). The *Landes* court found that a promise to lend money to finance the purchase of real property was not barred by the statute of frauds, even though it was coupled with the promise to grant a lien against the property to secure the loan.

In the present case, Texaco asserts Ponsoldt made five distinct promises: (1) to pay $250,000 towards settlement with the homeowners; (2) to record beach access licenses for the homeowners; (3) to increase the homeowner's representation on the water company board; (4) to dismiss his claims against Texaco; (5) to close escrow on the ranch. Clearly the last promise is covered by the statute of frauds, and perhaps the second promise, granting access licenses to the homeowners, is the transfer of an interest in property. However, the remaining three promises are not transfers of interests in land and therefore are arguably divisible under *Landes*.

We do not read *Landes* so broadly. California law indisputably encourages divisibility of contracts as a means of furthering "the policy of restricting the application of the statute of frauds exclusively to those situations which are precisely covered by its language." *White Lighting*, 68 Cal.2d at 346, 66 Cal.Rptr. 697, 438 P.2d 345.

However, California courts have never applied this rule in complete disregard of common sense, such as Texaco would have us do here. Rather, we have identified two scenarios which warrant application of the divisibility rule.

■ First, promises not falling under the statute of frauds may be excised and enforced where the promises would otherwise be severable under standard rules of divisibility. "Generally speaking, the test of whether a contract is divisible is that if the consideration is single, the contract is entire, but if the consideration is apportioned, the contract may be regarded as severable." *Simmons v. California Institute of Technology*, 34 Cal.2d 264, 275, 209 P.2d 581, 587–88 (1949). This is the rule employed by the *White Lighting* court. There, the parties reached a termination-from-employment settlement agreement that provided, in part, that the employer would repurchase 5,000 shares of the employee's stock for $15,000. Although this "repurchase" agreement came within the statute of frauds, the California Supreme Court concluded that the promise "can be clearly distinguished and separated from the promises to pay one month's salary, traveling expense, and [the employee's] share of the gross receipts accrued during his period of employment...." *White Lighting*, 68 Cal.2d at 346, 66 Cal.Rptr. 697, 438 P.2d 345. As both sides of the consideration formula were discernible, the provision was severable.

■ Second, a promise coming within the statute of frauds may be excised—and the remainder of the contract enforced—where the promise is clearly ancillary to the contract as a whole. This was the situation in *Landes*. There, the primary purpose of the agreement was to arrange a loan. The lien-securing loan, which was held to be barred by the statute of frauds, was ancillary. As an ancillary provision, it was properly excised and the remaining portion of the contract enforced.

Here, neither of these exceptions apply. It is not possible to apportion separately the consideration that Texaco was to give Ponsoldt for the promises coming within the statute of frauds. Moreover, the primary purpose of the settlement agreement was to convey the El Capitan Ranch from Texaco to Ponsoldt. Thus, by definition, it cannot be said that this provision was "ancillary" to the agreement. Accordingly, we find the entire agreement unenforceable and will not divide it into separate parts. We affirm the district court's ruling.

c. *Estoppel.*

■ Texaco asserts that Ponsoldt should be estopped from relying on the statute of frauds because Texaco relied upon Ponsoldt's representations, and because he committed fraud upon Texaco. This issue was not ruled upon by the district court. Since the question of whether Texaco relied to its detriment on Ponsoldt's representations is a factual one, we will not reach it for the first time on appeal.

d. *Effect of Statute of Frauds on Texaco's Fraud and Misrepresentation Claims.*

■ The district court dismissed the second and third claims in Texaco's complaint, for fraud and negligent misrepresentation, finding they were "each dependent on the First Cause of Action for Breach of Settlement Agreement and must therefore also be dismissed." We reverse.

The California Supreme Court recognized in 1985 that an action for fraudulent misrepresentation may be brought where the allegedly fraudulent promise is unenforceable under the statute of frauds. *Tenzer v. Superscope*, 39 Cal.3d 18, 29, 216 Cal.Rptr. 130, 702 P.2d 212 (1985). The court held that the policy behind the statute of frauds, fraud prevention, was not served by refusing to permit a plaintiff to prove that he had been deceived into entering into a unenforceable contract. *Id.* at 30–31, 216 Cal. Rptr. 130, 702 P.2d 212. We explained the *Tenzer* rule in *Levin v. Knight*, 780 F.2d 786, 788 (9th Cir.1986). "*Tenzer* ... now permits an action for fraudulent misrepresentation upon an alleged oral agreement or upon an agreement otherwise unenforceable under the statute of frauds." *Levin*, 780 F.2d at 788 (citation omitted). Because

California considers negligent misrepresentation to be a type of fraud,[2] that claim also survives even though the settlement agreement itself is unenforceable.

AFFIRMED in part, REVERSED in part, and REMANDED. The parties shall bear their own costs on appeal.

2. *See Continental Airlines v. McDonnell Douglas Corp.,* 216 Cal.App.3d 388, 403–04, 264 Cal.Rptr. 779 (1989), *modified and reh'g denied,* 1990 Cal. App. LEXIS 8, *rev. denied,* 1990 Cal. LEXIS 1081 (1990); *Blankenheim v. E.F. Hutton & Co,* 217 Cal.App.3d 1463, 1472–73, 266 Cal.Rptr. 593, *rev. denied,* 1990 Cal. LEXIS 1932 (1990).