**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEBORAH WOOD,
          *Plaintiff-Appellant,*

v.

GCC BEND, LLC, an Oregon
Limited Liability Corporation,
          *Defendant-Appellee.*

No. 04-35073

D.C. No.
CV-01-01723-DCA

OPINION

Appeal from the United States District Court
for the District of Oregon
Donald C. Ashmanskas, Magistrate Judge, Presiding

Argued and Submitted
July 13, 2005—Portland, Oregon

Filed September 6, 2005

Before: Pamela Ann Rymer and Andrew J. Kleinfeld,
Circuit Judges, and Charles R. Weiner,*
Senior District Judge.

Opinion by Judge Rymer

---

*The Honorable Charles R. Weiner, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

12245

---

**COUNSEL**

Scott N. Hunt and Matthew B. Duckworth, Busse & Hunt, Portland, Oregon, for the plaintiff-appellant.

Richard N. VanCleave and Bradley F. Tellam, Barran Liebman LLP, Portland, Oregon, for the defendant-appellee.

---

**OPINION**

RYMER, Circuit Judge:

Deborah Wood appeals from the partial summary judgment entered in favor of GCC Bend, LCC, on her claims for age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, Or. Rev. Stat. § 659A.030 (the state age discrimination statute), and the Oregon common law of wrongful constructive dis-

charge.[1] The district court granted summary judgment on the Oregon common law claim and on the statutory claims to the extent they were based on a constructive discharge theory, and it denied summary judgment on Wood's ADEA claim and its Oregon counterpart to the extent that each was based on a theory that Wood suffered an adverse employment action when she was reassigned from one position to another. The court certified its judgment pursuant to Fed. R. Civ. P. 54(b) on all claims to the extent they are premised on constructive discharge; it then stayed and administratively dismissed, without prejudice, the remaining proceedings pending appeal of the constructive discharge issue. We conclude that the constructive discharge issue should not be immediately appealable, and we therefore lack jurisdiction. Accordingly, we reverse the certification, dismiss the appeal, and remand.

I

GCC Bend hired Wood on January 24, 2000, at the age of 48, to be Director of Sales for the radio stations that it operated in Bend, Oregon. GCC Bend was owned by Herb Gross and his two sons, Jim and John. John Gross was President and oversaw all company operations. According to Wood's evidence, she had a base salary of $65,000 with the possibility of a quarterly bonus if the sales department met budgeting goals. John Gross tended to hire younger employees than those hired by Wood and the general manager, Dan Volz, and he often replaced departing employees with younger employees. Both John and Jim Gross made comments about wanting a younger sales force, and criticized older employees as "out of touch." John Gross also socialized with younger employees outside the office, was critical of older employees but hands-off with younger employees, gave older salespeople more challenging budget goals while transferring accounts to younger salespeople, and afforded training opportunities to youn-

---

[1]Both parties consented to proceeding before a magistrate judge.

ger sales staff instead of older staff, contrary to Wood's recommendation.

Wood told Gross that the budget goals for the older sales-people were unattainable; she differed with his decisions to transfer accounts from three older workers; she defended the older salespeople's ability to sell for radio stations with younger demographics; and she hired older applicants for sales positions contrary to Gross's wishes. After this, Gross's "micro-management" of Wood increased, and he embarrassed Wood in front of her co-workers by cutting her off mid-sentence and ignoring her, by stating in their presence that he would not give her a raise and that she was making more than her performance merited, and by having a younger salesperson, Brian Canady, give a presentation that she didn't know about on one of her accounts. In either November or December 2000, Gross met with Wood, yelled at her, and told her that she had no input or decision-making power for hiring or firing in the sales department.

In March 2001, Wood was reassigned by the new general manager, Steve Stephenson, from Director of Sales to "National Sales Manager." Her new position required less management and more sales. Wood signed a modified employment agreement providing that she would receive the same salary as before, $65,000, plus quarterly bonuses based on her own sales, and that she would receive severance pay if she were terminated without cause. In the first quarter she earned a bonus of $3,500 — her first bonus at the company.

Stephenson resigned March 30 but, according to Wood, told her before he resigned that Gross made the decision to "demote" her because of "weaknesses" and that Gross planned eventually to promote Canady to replace her. In late June 2001, John Gross asked Wood to meet with him and Laurie Reyes, the business manager. Gross talked about the fact that Wood's apparent unhappiness was demoralizing the sales department, and that a number of people had told him

that Wood wanted to leave the company. Gross suggested that perhaps she and the company were no longer a good match. He explained that they could part as friends and work something out financially. Wood told Gross, falsely, that she was happy. When Wood asked Gross if he was firing her, he looked surprised and said no, but that if she were unhappy it wasn't healthy for her or the company and perhaps she should rethink her position.

Soon after the meeting, Gross called Wood at home when she was out sick to let her know that he had hired a new Director of Sales. He described the new director as "young, energetic, a runner and highly qualified." Wood believed that the company could not afford to keep her, the new Director of Sales, and Canady on the payroll and that Gross was intent on forcing her to resign. Wood resigned on July 13, 2001, the day she received her bonus and approximately three weeks after the meeting with Gross and Reyes.

Wood then brought suit alleging claims for (1) age discrimination, and retaliation for opposition to age discrimination, in violation of the ADEA; (2) age discrimination, and retaliation for opposition to age discrimination, in violation of Or. Rev. Stat. § 659A.030; and (3) wrongful constructive discharge. GCC Bend moved for summary judgment, which the district court granted in part (on Wood's theory of constructive discharge) and denied in part (on her theory of demotion). It concluded that while her change in job title could reasonably be considered a demotion, not every demotion is a constructive discharge; that she did not resign as a result of it; and that Wood's other evidence does not show a change in the conditions of her employment sufficient to support a claim of constructive discharge under federal or state law. However, the court found that Wood did raise a triable issue that she was demoted, which would be an adverse employment action, and that there was enough evidence to show that it was on account of unlawful discrimination. Thus, it concluded, Wood's claims for age discrimination and retaliation survive summary

judgment but only to the extent they are premised on the adverse employment action of her reassignment, and that because there is no issue of material fact that she was not constructively discharged, that theory cannot, as a matter of law, support her claims for age discrimination and retaliation.

Wood moved for certification of the judgment on her constructive discharge claims under the ADEA and Oregon statutory and common law, and to stay the remaining proceedings. The district court granted the motion, reasoning that Wood's claim for wrongful constructive discharge is a distinct claim; that her claims for discrimination and retaliation under the ADEA and its Oregon counterpart, to the extent they are based on a theory of constructive discharge, are closely related, factually and legally, to the common law claim; and that the "pragmatic approach" is to grant certification of judgment on her statutory claims as well as on her common law claim.

Wood timely appealed. GCC Bend contested certification in the district court, but let it go on appeal. Perhaps GCC Bend decided that it would just as soon have an appellate resolution on the merits of the constructive discharge issues, but jurisdiction cannot turn on consent or a change of heart. Therefore, we asked the parties to discuss at oral argument whether the judgment was properly certified under Rule 54(b). They did, and we now explain why we disagree with the district court's determination to certify.

II

Rule 54(b) provides that "[w]hen more than one claim for relief is presented in an action, . . . the court may direct entry of final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." The Supreme Court set out a framework for applying this rule in *Sears, Roebuck & Co. v. Mackey*, 351

U.S. 427 (1956), which it repeated more recently in *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7-10 (1980).

**[1]** A district court must first determine that it has rendered a "final judgment," that is, a judgment that is " 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' " *Curtiss-Wright*, 466 U.S. at 7 (quoting *Mackey*, 351 U.S. at 436). Then it must determine whether there is any just reason for delay. "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised 'in the interest of sound judicial administration.' " *Id.* at 8 (quoting *Mackey*, 351 U.S. at 437). Whether a final decision on a claim is ready for appeal is a different inquiry from the equities involved, for consideration of judicial administrative interests "is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.' " *Id.* (quoting *Mackey*, 351 U.S. at 438).[2]

---

[2]The Court has eschewed setting narrow guidelines for district courts to follow. *Id.* at 10-11. However, *Curtiss-Wright* sheds light on the factors that may inform a judge's decision.

Curtiss-Wright and General Electric had entered into a series of contracts; Curtiss-Wright sued and among other things, sought $19 million from General Electric on the balance due on the contracts already performed. The only issue on that claim involved application of a release clause in each of the agreements, and on that issue the district court granted summary judgment in favor of Curtiss-Wright and ruled that it was entitled to prejudgment interest at the New York statutory rate. Those orders were certified as final judgments under Rule 54(b). In doing so the district court acknowledged that Rule 54(b) certification should be reserved for "the infrequent harsh case because of the overload in appellate courts which would otherwise result from appeals of an interlocutory nature," but determined that the interests of sound judicial administration and justice to the litigants weighed in favor of certification. *Id.* at 5-6. The court considered whether certification would result in unnecessary appellate review; whether the claims finally adjudicated were separate, distinct, and independent of any other claims; whether review of the adjudicated

The role of the court of appeals is "not to reweigh the equi-
ties or reassess the facts but to make sure that the conclusions
derived from those weighings and assessments are juridically
sound and supported by the record." *Id.* at 10. As the Court
explained:

> There are thus two aspects to the proper function of
> a reviewing court in Rule 54(b) cases. The court of
> appeals must, of course, scrutinize the district court's
> evaluation of such factors as the interrelationship of
> the claims so as to prevent piecemeal appeals in
> cases which should be reviewed only as single units.
> But once such juridical concerns have been met, the
> discretionary judgment of the district court should be
> given substantial deference, for that court is the one
> most likely to be familiar with the case and with any
> justifiable reasons for delay. The reviewing court
> should disturb the trial court's assessment of the
> equities only if it can say that the judge's conclusion
> was clearly unreasonable.

claims would be mooted by any future developments in the case; whether
an appellate court would have to decide the same issues more than once
even if there were subsequent appeals; and whether delay in payment of
the judgment (which in that case could be years because of the complexity
of the remaining claims) would inflict severe financial harm.

The Supreme Court indicated that it was proper for the district judge to
consider such factors as whether the adjudicated claims were separable
from the others and whether the nature of the claim was such that no
appellate court would have to decide the same issues more than once. It
suggested that while the absence of any of these factors would not neces-
sarily mean that certification was improper, it would require the district
court "to find a sufficiently important reason for nonetheless granting cer-
tification." *Id.* at 8 & n.2. The Court illustrated the point by observing that
if the district court concluded that an appellate court might have to face
the same issues on a later appeal, this downside might be offset by the
upside of finding that appellate resolution of the certified claims might
facilitate settlement of the remaining claims. *Id.* at 8 n.2.

*Id.* (internal citation and quotation marks omitted).

We start (and mostly stop) with juridical concerns. On this query our review is *de novo. Gregorian v. Izvestia*, 871 F.2d 1515, 1519 (9th Cir. 1989).

**[2]** There is no question that the judgment on Wood's common law claim for wrongful constructive discharge is final. The district court's certification allows Wood's ADEA claim and its state counterpart to tag along with the wrongful constructive discharge claim to the extent that the statutory claims are based on a theory of constructive discharge. There also is no question that the common law claim bears a strong familial resemblance to the statutory claims for discrimination to the extent they turn on a theory of constructive discharge. However, certification left both discrimination claims standing to the extent they depend on a theory of adverse treatment based on Wood's reassignment from her position as Director of Sales to National Sales Manager.

**[3]** This is not a complicated case. It is a routine employment discrimination action. In such cases it is typical for several claims to be made, based on both state and federal law, and for several theories of adverse treatment to be pursued. It is also common for motions to be made for summary judgment, and to be granted in part and denied in part as district judges trim and prune a case to focus on what really is at issue for trial. At least in our experience, requesting — or granting a request for — certification in ordinary situations such as this is not routine. We believe it should not become so. As put by the Supreme Court, "[p]lainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Id.* at 10.

**[4]** Because Wood's case is itself routine and partial adjudication of one of several related claims or issues is likewise routine, granting her Rule 54(b) request does not comport with the interests of sound judicial administration. First, as

Wood herself acknowledges, this case would inevitably come back to this court on the same set of facts. "We particularly scrutinize a district judge's rule 54(b) certification . . . to 'prevent piecemeal appeals in cases which should be reviewed only as single units.' " *McIntyre v. United States*, 789 F.2d 1408, 1410 (9th Cir. 1986) (quoting *Curtiss-Wright*, 466 U.S. at 10). There is nothing unique or distinguishing about Wood's theories of adverse treatment. Although the constructive discharge components of Wood's discrimination claims require proof of objectively intolerable working conditions, *see Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1411 (9th Cir. 1996); *McGanty v. Staudenraus*, 321 Or. 532, 557 (1995), the factual bases for both theories are identical, except, perhaps, for the "handwriting-on-the-wall" meeting which is more clearly probative on the issue of constructive discharge than on the issue of demotion.

While the adjudicated claim for wrongful constructive discharge under state law may be distinct in the sense that it is an individual claim, it is not truly separable from Wood's other claims. The district court found that the wrongful constructive discharge claim is "closely related, factually and legally" to Wood's remaining claims for discrimination and retaliation under the ADEA and its state counterpart to the extent they are based on a theory of constructive discharge. While the court made no finding with respect to the remaining claims to the extent they are *not* based on a theory of constructive discharge, it is evident from the record that the facts upon which Wood would prove discrimination based on demotion are largely the same as those upon which she relies to show wrongful constructive discharge.

We have no district court finding to defer to about the interrelationship of the claims or issues, and the effect of the relationship on the likelihood of piecemeal appeals. The court did conclude that certifying all constructive discharge *issues* was the pragmatic thing to do. We understand the difficulty of deciding whether a pleading is a unitary claim or multiple

claims, and even more mystically, whether issues in related claims stand alone, or apart from their claims, for purposes of Rule 54(b) finality. The difficulty is compounded where, as here, theories articulated in different claims are piggy-backed onto a finally adjudicated claim.[3] Because of this, our court has previously embraced "a more pragmatic approach focusing on severability and efficient judicial administration." *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) (upholding certification of partial summary judgments based on an exculpatory clause given the size and complexity of the case and the fact that the matters disposed of were sufficiently severable factually and legally from the remaining matters, and completely extinguished the liability of certain parties on one claim).

[5] We abjure the task of discerning how Wood's claims or theories should be characterized because regardless of whether she has simply articulated alternative theories of recovery, or could separately have stated claims for both adverse employment actions about which she complains, the practical effect of certifying the constructive discharge issues in this case is to deconstruct her age discrimination action so as to allow piecemeal appeals with respect to the same set of facts. On one theory the facts might show that GCC Bend constructively discharged Wood because of her age and opposition to the company's age discrimination; on another theory,

---

[3]Simply because issues raised in claims that have not themselves been finally adjudicated are "closely related, factually and legally," to the issue resolved in the distinct claim that is final does not mean that all claims are final, or that the interests of judicial administration are well served by treating them as if they were. As we have explained, "Rule 54(b) does not relax the finality required of each decision, as an individual claim, to render it appealable. It simply allows a judgment to be entered if it has the requisite degree of finality as to an individual claim in a multiclaim action. The partial adjudication of a single claim is not appealable despite a rule 54(b) certification." *Arizona State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1039-40 (9th Cir. 1991) (internal quotation marks and citations omitted).

they might show that she was demoted for the same reasons. Either way, her legal right to relief stems largely from the same set of facts and would give rise to successive appeals that would turn largely on identical, and interrelated, facts. This impacts the sound administration of justice.[4]

[6] Another way of looking at the same thing is that certification in this case effectively severs trial on different theories of adverse treatment arising out of the same factual relationship. There is little doubt that severance in a straightforward case such as this would never occur as it would strain, rather than serve, the interests of sound judicial administration. This is yet another indicator that the issues and claims at stake are not truly separable, and should not be separated artificially, for purposes of Rule 54(b).

We do not mean to suggest that claims with overlapping facts are foreclosed from being separate for purposes of Rule 54(b). Certainly they are not. Both the Supreme Court and our court have upheld certification on one or more claims despite the presence of facts that overlap remaining claims when, for example, counterclaims are involved that arise out of the same transaction or occurrence as the certified claim, or the case is

---

[4]To posit an extreme possibility, suppose a plaintiff avers that she was not promoted, that she was demoted, that she was transferred, that she was excluded from the loop, and that she was constructively discharged on account of her age in the course of the same factual relationship with her employer and co-employees. Each of these theories could be challenged and adjudicated at different pretrial stages. Suppose, for instance, the defendant moved for, and was granted in part, a motion for judgment on the pleadings, a motion to dismiss, a motion for summary judgment, and that the court eliminated or simplified issues at the pretrial conference. In these circumstances it is easy to see why certification, and piecemeal appellate jurisdiction to review each of these hypothetical rulings seriatim, would be administratively burdensome and indeed, would make no sense at all. Of course, Wood's case presents a much simpler and less absurd situation. But the point is no less well taken, that "sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Curtiss-Wright*, 446 U.S. at 10.

complex and there is an important or controlling legal issue that cuts across (and cuts out or at least curtails) a number of claims.[5] However, the circumstances in this case are not similar to those in which certification has been approved even though the remaining claims entail proof of the same facts involved in the claims that are dismissed. This is neither a

---

[5]*Compare*, *e.g.*, *Cold Metal Process Co. v. United Eng'g & Foundry Co.*, 351 U.S. 445, 451-52 (1956) (holding that Rule 54(b) allows entry of final judgment even if an uncertified counterclaim arises out of the same transaction or occurrence); *Curtiss-Wright*, 446 U.S. at 9 (reiterating that counterclaims present no problem for a Rule 54(b) certification); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (1991) (calling *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962 (9th Cir. 1981), "outdated and overly restrictive" and upholding certification even though the certified claims and remaining counterclaims required proof of the same facts where the district court's rulings separated the legal from the factual questions and certain theories of recovery were eliminated); *Continental Airlines*, 819 F.2d at 1525 (approving in a complex case certification of partial summary judgments that narrowed the issues, shortened any subsequent trial by months, and efficiently separated the legal from the factual questions where the matters disposed of were sufficiently severable factually and legally from remaining matters and completely extinguished the liability of one class of defendant); *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (9th Cir. 1987) (upholding certification of judgment on all claims but counterclaim, indicating that the Rule 54(b) claims do not have to be separate from and independent of the remaining claims), *with Miller*, 938 F.2d at 1040 (holding that punitive damage count and compensatory damage counts are "inextricably intertwined" as the basic theories of recovery and the core set of operative facts on both would be the same); *Gregorian*, 871 F.2d at 1520 (upholding certification because the district court could properly conclude that the factual and legal issues involved in a claim for intentional infliction of emotional distress were substantially different from those raised in a libel claim); *McIntyre*, 789 F.2d at 1410 (upholding certification where uncertified counterclaim "would require proof of different facts"); *Morrison-Knudsen*, 655 F.2d at 965 (holding that it was not proper to direct entry of judgment when counterclaim reserved for trial and counterclaims upon which summary judgment was granted were logically related from a factual and legal standpoint); *Hasbrouck v. Sheet Metal Workers Local 232*, 586 F.2d 691, 694 (1978) (noting that state law claims, to the extent they rely on the same set of facts common to a federal claim, do not constitute a separate "claim" for purposes of Rule 54(b)).

complex case nor one where the only remaining claim is a counterclaim; the factual issues overlap entirely — not just substantially; and the only legal right asserted is the right not to be discriminated against on account of age. In these circumstances, the guiding principle is that "[a] similarity of legal or factual issues will weigh heavily against entry of judgment under [Rule 54(b)] . . . ." *Morrison-Knudsen*, 655 F.2d at 965.

**[7]** The greater the overlap the greater the chance that this court will have to revisit the same facts — spun only slightly differently — in a successive appeal. The caseload of this court is already huge. More than fifteen thousand appeals were filed in the last year. We cannot afford the luxury of reviewing the same set of facts in a routine case more than once without a seriously important reason.

**[8]** No such reason appears in the record of this case. Unlike the plaintiff in *Curtiss-Wright*, for example, Wood does not stand to gain or lose a significant amount of money unless the appeal is heard now rather than at the end of trial. Trial would be neither lengthy nor complex; it is a single plaintiff, single defendant case involving a discrete employment relationship that played out in a relatively short time among relatively few actors.[6]

---

[6]According to the district court, Wood asserted that constructive discharge, rather than demotion, was the "primary focus" of each of her claims and that appellate resolution of the constructive discharge issue could facilitate settlement because of the disparate damages available for the resolved versus the unresolved claims. Although settlement prospects that turn on immediate appeal would be a finding to which we would defer, the district court did not actually say so in this case, and the parties do not seem to think so. As the Supreme Court suggested in *Curtiss-Wright*, in a proper case settlement prospects might outweigh piecemeal appeal concerns; however, in this case, the record does not indicate that there is any serious possibility of settlement that turns on which theory survives. To the contrary, it appears that the parties simply have quite different takes on the value of Wood's case.

Further, absent certification, we may never have to decide whether Wood was constructively discharged as a matter of law. The district court could change its mind if this case were to go to trial; district judges may always revisit their prior rulings, and here the evidence on both theories is the same. Even though it appeared on summary judgment that no triable issue exists on constructive discharge, the court could reconsider in light of the evidence adduced at trial if that evidence turned out to raise an unexpected inference of intolerable working conditions. Or the issue could be mooted. Or the case might settle.

[9] Finally, the district court found that there was no reason for delay but did not explicitly take judicial administrative interests into account.[7] It made no findings (and did not conclude) that the interests of sound judicial administration are served by interlocutory appeal in this particular case.

Duplication of proceedings and overall delay in final disposition of the action implicate sound judicial administration. The first of the Federal Rules of Civil Procedure mandates construing the rest of the rules "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. The reality is that if this case had gone to trial in the ordinary course, it would long since have been over and done with. The constructive discharge issues were certified November 20, 2003 and we submitted this appeal on July 13, 2005. Instead of one appeal that we could now resolve, certification makes it likely there will be two. Regrettably, each takes time and money. Absent a seriously important reason, both the spirit of Rule 1 and the interests of judicial administration

---

[7]The court concluded that there was no just reason to delay an appeal to resolve the constructive discharge issue, but did not base its determination on the specific equities of Wood's case. *Cf., e.g.*, *Curtiss-Wright*, 466 U.S. at 8, 10 (recognizing the winning party's financial stake in an early outcome as one of the equities that a district court may factor into its decision whether to certify a judgment that is otherwise certifiable). Nor has Wood identified any. Accordingly, we assume that there are none.

counsel against certifying claims or related issues in remaining claims that are based on interlocking facts, in a routine case, that will likely lead to successive appeals.

[10] As this is a routine case, the facts on all claims and issues entirely overlap, and successive appeals are essentially inevitable, we conclude that Wood's Rule 54(b) request was improvidently granted. Accordingly, we lack jurisdiction to hear her appeal. For this reason we cannot reach the merits of whether the district court properly granted summary judgment on Wood's Oregon common law claim and on her claims under the ADEA and its state law counterpart to the extent they are based on a constructive discharge theory. Therefore, we reverse the Rule 54(b) certification, dismiss the appeal, and remand for further proceedings.

CERTIFICATION REVERSED; APPEAL DISMISSED; REMANDED.