NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   EC-10-1318-JuKiD |
| | BAP No.   EC-10-1319-JuKiD |
| LARRY TEVIS and NANCY TEVIS, | BAP No.   EC-10-1320-JuKiD |
| | BAP No.   EC-10-1321-JuKiD[*] |
| Debtors. | (related appeals) |
| LARRY TEVIS; NANCY TEVIS, | Bk. No.   04-26357 |
| | Adv. No.  08-2004 |
| Appellants, | |
| | M E M O R A N D U M[**] |
| v. | |
| MAX HOSEIT; HERMAN L. KOELEWYN; HOSEIT & KOELEWYN; DANIEL L. EGAN; MICHAEL F. BURKART, Trustee; FIRST AMERICAN TITLE COMPANY, | |
| Appellees. | |

Argued and Submitted on November 16, 2011
at Sacramento, California

Filed - December 9, 2011

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Thomas C. Holman, Bankruptcy Judge, Presiding
_____

[*] While not formally consolidated, these four related appeals were heard at the same time and were considered together. This single disposition applies to the four appeals, and the clerk is directed to file a copy of this disposition in each appeal.

[**] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appearances:    Appellant Larry Tevis argued for Appellant Nancy Tevis and himself pro se; Andrew Edward Benzinger, Esq. of Lewis, Brisbois, Bisgaard & Smith LLP, argued for Appellees Max Hoseit, Herman L. Koelewyn and Hoseit & Koelewyn; Mark Adelos Gorton, Esq. of Boutin Jones Inc., argued for Appellee First American Title Company; Daniel L. Egan, Esq. of Wilke, Fleury, Hoffelt, Gould & Birney, LLP argued pro se; Michael F. Burkart, Trustee argued pro se.

_____

Before:    JURY, KIRSCHER, and DUNN, Bankruptcy Judges.

In this appeal we review four orders entered by the bankruptcy court dismissing appellants' third amended complaint ("TAC") as to appellees, (1) Max Hoseit and Herman Koelewyn, principals of the law firm of Hoseit & Koelewyn (collectively, "H&K"); (2) Daniel L. Egan ("Egan"), an attorney with Wilke, Fleury, Hoffelt, Gould, & Birney, LLP; (3) Michael F. Burkart (the "Trustee"); and (4) First American Title Company ("FATCO") (collectively, "Appellees"), without leave to amend.

For the reasons stated, we AFFIRM.

## I.  FACTS

We set forth the following facts, culled from the excerpts of record provided by Appellees and the underlying bankruptcy case and adversary proceeding dockets,[1] to provide context for

_____

[1] The Panel excused debtors from filing excerpts of record in these appeals by order entered on May 6, 2011, due to their financial hardship and representation that all the relevant documents were contained on the court's docket.  Therefore, to the extent needed, we take judicial notice of the relevant pleadings docketed and imaged in debtors' underlying bankruptcy case and adversary proceeding which were not included in the record by Appellees.  Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

(continued...)

-2-

the allegations in debtors' TAC.

## Prepetition Events

Debtors purchased unimproved property in Recuse, California in March 1989. After making improvements, they placed a manufactured house on the property which was later destroyed by wind and rain. In 1998, they signed a contract to purchase a new manufactured house with Taylor's Capitol Mobile Home Sales ("TCMHS"). To purchase the house and make the necessary improvements, they also applied for a State of California, Department of Veterans Affairs ("Cal Vet") mortgage loan which was eventually consummated and funded. FATCO recorded the grant deed in favor of Cal Vet on their property.

Debtors took steps to place the new house on their property, which included, among other things, a new foundation. The foundation was completed and the house delivered, but debtors were not happy for a variety of reasons. As a result, they commenced litigation against Fleetwood Homes of California, dba Fleetwood, TCMHS, Affordable Awnings, and Lee Williams dba Gold Key Mobile Home Contractors (the "Modular Home Litigation"). Debtors also commenced a separate lawsuit against their escrow company, Spring Mountain Escrow, dba Heritage Escrow ("Heritage").

Debtors retained H&K to represent them in the litigation after their initial attorney withdrew due to retirement. Later,

---

[1](...continued)
Although we excused debtors from filing excerpts of record, we did not excuse them from providing us with adequate citations to the record, which they did not do. See Rule 8010(a)(1)(D).

-3-

H&K withdrew for reasons not apparent from the record. Debtors then retained attorney Paul L. Cass ("Cass"), who is not part of this appeal.

In July 2002, on the morning of the trial, Cass successfully negotiated a settlement of the Modular Home Litigation for $65,000. Although most of the defendants tendered checks to Cass, debtors decided not to consummate the settlement. After further litigation, the California Superior Court confirmed the settlement on March 24, 2003. Cass then prepared a stipulation and release (the "Stipulation") which the defendants signed, but the debtors did not.

At some point, debtors filed malpractice actions against H&K and Cass. In turn, H&K and Cass asserted attorney's liens against the proceeds from the Modular Home Litigation settlement and filed suit against debtors for their fees.

Meanwhile, debtors defaulted on the loan with Cal Vet. In early 2004, Cal Vet filed an unlawful detainer action against debtors in the California Superior Court, County of Eldorado.

### Bankruptcy Events

On June 21, 2004, debtors filed their chapter 7[2] petition, and Michael F. Burkart was appointed as their Trustee. Debtors removed the Modular Home Litigation to the bankruptcy court. Thereafter, the Trustee, with court authorization, employed Egan as his counsel. With Egan's assistance, the Trustee negotiated

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

an amendment to the Stipulation signed by the parties in state court in order to implement the original settlement for $65,000. The Trustee also reached an agreement with H&K and Cass regarding the malpractice claims and their attorney's liens.

Despite debtors' objections, the bankruptcy court approved the settlements in a Memorandum Decision filed October 29, 2004. Debtors appealed that decision on November 8, 2004 (BAP No. 04-1575). Two days later, on November 10, 2004, the bankruptcy court entered the order approving the settlements. On February 16, 2005, the Panel dismissed debtors' appeal for lack of prosecution.

A condition precedent to the settlements involving the Modular Home Litigation and the malpractice actions was a settlement agreement between the Trustee and Cal Vet. On November 16, 2004, the Trustee filed a motion to approve his agreement with Cal Vet. That agreement established the amount of the indebtedness on debtors' property, authorized the Trustee to sell the property, and required Cal Vet to dismiss their prepetition state court action against debtors. This settlement apparently was not consummated because debtors moved to convert their case to chapter 13 when they learned that the Trustee intended to sell their residence. The bankruptcy court converted their case on December 1, 2004, and the Trustee's appointment was terminated.

Debtors confirmed a chapter 13 plan on July 18, 2005, which assumed and ratified the settlements of the Modular Home Litigation and malpractice actions.

**A.    The Adversary Complaint**

On January 2, 2008, debtors commenced the adversary proceeding out of which these appeals arise.  The complaint asserted claims for relief for: (1) fraud; (2) fraudulent inducement; (3) defamation; (4) breach of written contract; (5) breach of oral/implied contract; (6) breach of fiduciary duty; (7) gross negligence; (8) equitable, declaratory, injunctive relief, and accounting; (9) intentional infliction of emotional distress; (10) negligent infliction of emotional distress; (11) violation of bankruptcy automatic stay; (12) violation of Health and Safety Code § 18000, et seq.; and (13) breach of the duty of good faith and fair dealing.

### The First Amended Complaint

Debtors filed a first amended complaint ("FAC") on May 13, 2008.  Appellees filed motions to dismiss, which the court granted, with leave to amend.

### The Second Amended Complaint

Debtors filed a second amended complaint on September 22, 2008.  Appellees filed another round of motions to dismiss, which the court granted, with further leave to amend.  In its civil minute order, which was virtually identical with respect to each appellee, the court stated:

> Plaintiffs . . . are granted leave to amend the complaint a final, third time.  Plaintiffs may file a third amended complaint that comports with Fed. R. Civ. P. 8(a), made applicable herein pursuant to Fed. R. Bankr. P. 7008, as to Defendant [ ] on or before September 1, 2009.  In the amended complaint, each claim and the involvement of each defendant in that claim must be sufficiently alleged.  Plaintiffs' amended complaint must include clear, concise, and complete factual allegations describing the conduct and events which underlie Plaintiffs' claims.  Simply

-6-

naming numerous defendants and then alleging that 'defendants' acted wrongfully is not sufficient. Failure to file an amended complaint that conforms to the requirements of this ruling may result in dismissal of this action without leave to amend for failure to state a claim upon which relief can be granted.

**The TAC**

Debtors filed the TAC on September 1, 2009. The TAC complaint added claims for relief for malicious prosecution, fraud under 18 U.S.C. §§ 152 and 3571, declaratory relief, and injunctive relief. Due to its length, we recite only an abbreviated version of the general statements and allegations taken from debtors' TAC in ¶¶ 35-71[3] and accepted as true for the purpose of deciding Appellees' separately filed motions to dismiss.

**General Allegations In ¶¶ 35-71 Of The TAC**

Debtors alleged that TCMHS never reported the sale of the manufactured house to the State of California until 2003.

Debtors alleged that on June 4, 1998, Cal Vet appraised debtors' new manufactured home and their property for $188,000. The appraisal was done before the loan approval, before the house foundation was built, and before their modular home was built. A central air conditioner was included in the appraisal and paid for by debtors. Debtors alleged that they never received the air conditioner.

Debtors further alleged that the foundation for the manufactured house never passed the El Dorado County inspection because it was defective and not built according to the approved engineer's plans. According to debtors, TCHMS directed them to Pacific Consulting

---

[3] Debtors incorporate ¶¶ 35-71 into their first through tenth claims for relief. The eleventh and thirteenth through eighteen claims for relief are included in the prayer of the TAC and do not incorporate these paragraphs nor do they assert any additional allegations to support any claim. There is no twelfth claim for relief in the TAC.

Engineers ("PCE") and David Dahmen to have the foundation plans drawn up. They paid PCE $350. Debtors alleged that their home was a total loss due to its placement on the defective foundation and because the home was not built according to plan. Debtors allege that TCHMS and Fleetwood refused to replace or repair the home.

Debtors further alleged that David Dahmen wrote a fraudulent report regarding their foundation and that he and PCE committed fraud against them. Debtors maintain that they suffered mental, financial, and loss of self worth for over a decade for the harm PCE and David Dahmen had caused them.

Debtors alleged that on June 24, 1998, they obtained the Cal Vet loan and signed the contract on the same date. Debtors alleged that TCHMS signed the Cal Vet contract, but then sent a fax to Cal Vet stating that it was not going to abide by the contract's terms.

Debtors alleged that on July 22, 1998, FATCO recorded the grant deed with Cal Vet on the property with an "unverified" false/fake address and with a different escrow number (8273) than the Cal Vet escrow number (7989). Debtors alleged that FATCO recorded the fraudulent grant deed at the El Dorado County Recorder Office, in Placerville, California. Debtors stated in the TAC that if FATCO had been honest and followed the proper procedure of recording the grant deed, debtors would not be in the dire situation that they are in, of losing their residence and experiencing mental and financial damage with more than a decade of litigation and hardships.

Debtors alleged that in August 2002, they lost the right of access to and from their property. Debtors alleged that Roy and Alberta McKenzie, an El Dorado County employee, and a state court clerk in El Dorado County, removed the easement of record on their property that allowed debtors access to and from their residence. Debtors alleged that Cal Vet held the title to the McKenzies' land, as Roy McKenzie had a Cal Vet loan. Debtors alleged that Cal Vet knew that debtors lost their right of access to and from the land. Debtors further alleged that fraud was committed when the McKenzies presented a fraudulent "Exhibit." Debtors also alleged that the McKenzies' attorney, Doug Roecea, is a party of interest against debtors as Doug Roecea represented debtors at an earlier time.

Debtors alleged that in 2002 FATCO denied their claim under the title insurance policy when they lost their access to their property. In the TAC, debtors sought

monetary relief from FATCO for the fraudulent grant deed and legal fees and costs for the loss of right to go in and out of the land.

Debtors alleged that on July 23, 1998, Cal Vet amended debtors' contract without their knowledge or signature for consent and/or approval. Debtors alleged that this violated and breached the Cal Vet contract and was fraud.

Debtors alleged that on July 27, 1998, their modular house was delivered in poor and damaged condition. This was allegedly in violation of the California Health and Safety Code and the Cal Vet contract.

Debtors alleged that their escrow company (Heritage) released all money owed to the dealer and violated the Cal Vet contract.

Debtors alleged that they were left with a severely damaged house and that it was a total loss, since it would cost more to rebuild the house than it cost new. Debtors alleged that Cal Vet refused to help them with the damaged house as required by the Cal Vet contract.

Debtors alleged that on July 26, 1999, they filed the Modular Home Litigation and hired Richard Rader ("Rader") to assist them.

Debtors alleged that Cal Vet refused to let debtors see their Cal Vet file. Debtors alleged that this was in violation and in breach of the Cal Vet contract and was also in violation of the Freedom of Information Act.

Debtors alleged that when Rader withdrew as debtors' attorney, they hired H&K on contingency in February 2002.

Debtors alleged that on August 5, 2002 a settlement agreement was made under debtors' duress. According to debtors, their state court attorneys Cass and Galgani forced the agreement upon debtors under false pretenses and dire consequences to debtors. Debtors alleged that they did not want to settle for $65,000 when the house cost $65,000, H&K had a lien on the debtors' house for over $50,000, Cass had a lien for over $50,000, and the title was in TCMHS's name, not debtors because TCMHS never reported the sale of the house to the State of California. Debtors moved to vacate the settlement agreement in the state court.

Debtors alleged that their attorney Cass wrote a letter to William (Bill) Gwire to deny debtors' legal representation by writing false misrepresentations to

slander debtors, by stating that Nancy Tevis had attacked the judge in his chambers.

Debtors further alleged that Cass wrote false misrepresentations in his motion of January 2003, such as Nancy Tevis threatened to file a false rape charge if Cal Vet did not give her husband a loan. Cal Vet was allegedly subpoenaed to testify against debtors in Sacramento County Superior Court during the Modular Home Litigation. Debtors alleged that to defraud and slander debtors, Cal Vet testified and lied to the court that Nancy Tevis threatened to file a false rape charge if Cal Vet did not give her husband a loan. According to debtors, this information was allegedly used against debtors in their bankruptcy case.

Debtors alleged that Cal Vet canceled their mandatory life insurance, but continued to charge them for the premium.

Debtors alleged that on September 12, 2003, Cal Vet cancelled debtors' contract.

Debtors alleged that H&K had adverse interests to them since H&K's client was the Opal Hampton Family Trust. Opal Hampton was allegedly the owner of TCMHS. Debtors alleged that H&K withdrew from their lawsuit with no just cause. Debtors alleged that H&K committed fraud on the court as a party to the bankruptcy court settlement of their malpractice claims. They alleged H&K agreed to fictitious facts in the agreement and knew they were false so that debtors would be blamed for H&K's withdrawal from their state court litigation and H&K would get paid money from debtors' estate. Debtors alleged that H&K willfully, knowingly lied and defrauded debtors and defrauded the court with the false records and false statements . . . . by falsely portraying debtors as responsible for H&K's departure from debtors' state court case.

Debtors alleged that Egan falsely stated [in his employment application] that there was not any contact with debtors prior to their bankruptcy. Debtors alleged that they had several contacts with Egan in which they told him about the Modular Home Litigation. According to debtors, their bankruptcy attorney, Ronald Melluish, did nothing about the conflict of interest.

Debtors alleged that when Egan filed a motion for the bankruptcy court to approve the compromise of the state court litigation, he knowingly made and used false records and statements to get it approved. Debtors alleged that Egan conspired and defrauded the

-10-

court and committed fraud upon the court to get Judge Christopher Klein to approve and grant the motion to compromise the state court litigation.

At another point, debtors alleged that the Trustee knowingly, deliberately, and willfully committed fraud upon the court to sell debtors' residence.

Due to Egan's conflict of interest, debtors alleged that all agreements made by him must be vacated.

Debtors further alleged that Egan committed fraud upon the court in the settlement with Cal Vet which authorized the Trustee to sell their residence.

Debtors alleged that Cal Vet violated the automatic stay and state court settlement agreement and that Cal Vet threatened to obtain relief from stay to take possession of debtors' property.

Appellees filed motions to dismiss debtors' TAC. On August 9, 2010, the bankruptcy court issued detailed minute orders granting the motions and dismissing the adversary proceeding as to Appellees without leave to amend and certified the dismissal orders as final judgments under Rule 54(b). Debtors timely appealed the orders.

**B.    The Limited Remand**

On October 15, 2010, the Panel remanded these appeals to the bankruptcy court for an express determination, in conformance with Rule 54(b), that there was no just reason for delay in reviewing the various orders. After the remand, debtors filed an ex parte motion requesting the bankruptcy court to make the necessary findings for certification.

On January 12, 2011, the bankruptcy court issued separate Supplemental Memoranda as to Appellees, finding that there was no just reason for delay of entry of the dismissal orders as final, appealable judgments under Civil Rule 54(b). The court explained that the orders adjudicated all claims for relief in

-11-

the TAC as to Appellees, debtors could not further amend the TAC, and Appellees had not filed counterclaims against debtors. The bankruptcy court thus found that the dismissal of the TAC ended the involvement of Appellees as parties in the adversary proceeding.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1).  This Panel has jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.    Whether the bankruptcy court abused its discretion in certifying the interlocutory dismissal orders as final judgments under Civil Rule 54(b);

B.    Whether the bankruptcy court erred in dismissing the TAC as to Appellees under Civil Rule 12(b)(6); and

C.    Whether the bankruptcy court abused its discretion in dismissing the TAC as to Appellees without leave to amend.

## IV.  STANDARDS OF REVIEW

We review a certification of an interlocutory judgment under Rule 54(b) for abuse of discretion. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 797 (9th Cir. 1991).

We review de novo the bankruptcy court's grant of a motion to dismiss under Civil Rule 12(b)(6). Movsesian v. Victoria Versicherung AG, 629 F.3d 901, 905 (9th Cir. 2010).  We may affirm the bankruptcy court's dismissal of a complaint "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Cooke, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.,

-12-

911 F.2d 242, 244 (9th Cir. 1990)(quoting Hishon v. King & Spalding, 104 S.Ct. 2229, 2232 (1984)).

We review a bankruptcy court's decision to dismiss a complaint with prejudice for an abuse of discretion. Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1018 (9th Cir. 2011).

> In applying our abuse of discretion test, we first 'determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested.' If the bankruptcy court identified the correct legal rule, we then determine whether its 'application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.' If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion.

USAA Fed. Sav. Bank. v. Thacker (In re Taylor), 599 F.3d 880, 887-88 (9th Cir. 2010)(citing United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)).

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V.  DISCUSSION

**A.  The Bankruptcy Court Did Not Abuse Its Discretion In Certifying The Dismissal Orders As Final Judgments Under Civil Rule 54(b)**

The bulk of debtors' opening brief is devoted to the issue of whether the bankruptcy court abused its discretion in certifying its dismissal orders as final judgments under Civil Rule 54(b). Debtors' position is curious when they themselves appealed the dismissal orders and, after this Panel remanded the matter back to the bankruptcy court to make further findings under Civil Rule 54(b), they filed an ex parte pleading urging

-13-

the bankruptcy court to make the findings necessary for certification. Now, taking a different approach, they maintain that the very certification they once supported is improper.

Notwithstanding debtors' inconsistent positions, we briefly consider whether the bankruptcy court's certification of the dismissal orders was proper only because we must satisfy ourselves that we are properly exercising our jurisdiction over these appeals.[4] "[Civil Rule] 54(b) controls the analysis of finality of judgments for purposes of appeal in federal civil actions, including bankruptcy proceedings." Belli v. Temkin (In re Belli), 268 B.R. 851, 855 (9th Cir. BAP 2001). We give great deference to the bankruptcy court's decision to certify under Civil Rule 54(b). Texaco, Inc., 939 F.2d at 798. Certification is proper if it will aid "expeditious decision" of the case. Id. at 797.

Civil Rule 54(b), made applicable to the Bankruptcy Code by Rule 7054(a), provides in part:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of

---

[4] Even if the dismissal orders were not final, we have broad discretionary authority to entertain interlocutory appeals from orders that are not final judgments. Beverly v. Wolkowitz (In re Beverly), 374 B.R. 221, 231 (9th Cir. BAP 2007). Upon grant of leave to appeal, we may entertain an interlocutory appeal. Id. However, because we conclude the bankruptcy court's certification of the dismissal orders as final judgments was proper, we need not further explore the possibility of an alternative basis for our jurisdiction.

-14-

fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

We conclude that the bankruptcy court properly applied the standards for certification under the rule. The bankruptcy court considered the finality of its orders dismissing the TAC with respect to Appellees — the TAC could not be further amended, none of Appellees had filed counterclaims, and the dismissal orders adjudicated all claims for relief in the TAC as to each appellee, thereby ending their involvement as parties in the adversary proceeding. As a consequence, there was nothing left to be done with respect to Appellees except to wait for the final disposition of the litigation.

The bankruptcy court also found no justifiable reason for delaying the entry of the dismissal orders as final orders. We give great deference to this finding because the bankruptcy court was "'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" Sheehan v. Atlanta Int'l Ins. Co., 812 F.2d 465, 468 (9th Cir. 1987). Nowhere in their brief do debtors set forth any justifiable reason for delaying the entry of the dismissal orders as final orders. We thus defer to the bankruptcy court's findings and are satisfied that we have jurisdiction over the orders on appeal.

**B.  The Bankruptcy Court Did Not Err In Dismissing The TAC**

Although debtors contend that the bankruptcy court should not have dismissed their TAC with respect to Appellees, they never argue that the bases for the August 9, 2010 dismissal orders under Rule 12(b)(6) — failure to state a claim for relief

-15-

and the running of the statute of limitations — were incorrect. Instead, they argue only about the bankruptcy court's abuse of discretion in certifying the dismissal orders and set forth other issues that are irrelevant to the underlying question on appeal.[5]

By raising these issues, debtors clearly misunderstand the scope of our review. The purpose of a motion to dismiss under Civil Rule 12(b)(6) is simply to test the legal sufficiency of the complaint. Therefore, our narrow scope of review of the orders on appeal does not allow us to reach the merits of any issue, and our inquiry is limited to the content of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).

## 1. Pleading Standards Under Civil Rule 8(a) and 9(b)

Generally, a plaintiff's burden at the pleading stage is relatively light. Civil Rule 8(a)(2), made applicable to the Bankruptcy Code by Rule 7008, states that all that is needed is "a short and plain statement of the claim showing that the pleader is entitled to relief." In turn, this means that the complaint must include "sufficient allegations to put defendants

---

[5] Debtors' remaining "issues" ask (1) is FATCO's recorded grant deed valid? (2) does the BAP's Opinion, "Trustee's council [sic] is Disqualified" stand? (3) is the Appellants' Motion to Vacate the Settlement Agreement, now the Adversary? and (4) Does the "Fraud upon the Court" claim in this Adversary make this appeal decision moot? Debtors' questions appear related to facts or allegations in their TAC which were not "adjudicated" to a conclusion rather than any error committed by the court in relation to the standards under Civil Rule 12(b)(6). Because these "issues" or questions are irrelevant to this appeal, we do not discuss them.

fairly on notice of the claims against them."  McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).  When a plaintiff asserts multiple claims against multiple defendants, this fair notice standard requires that the allegations in the complaint must show which defendants are liable to the plaintiff for which wrongs.  See Gauvin v. Trombatore, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988)(plaintiff must allege the basis of his claim against each defendant to satisfy [Civil Rule] 8(a)(2)); Van Dyke Ford, Inc. v. Ford Motor Co., 399 F.Supp. 277, 284 (E.D. Wis. 1975) ("Specific identification of the parties to the activities alleged is required . . . to enable the defendant[s] to plead intelligently.").

These appeals also implicate Civil Rule 9(b) which states a heightened standard for pleading fraud claims — a standard slightly more onerous than the "short and plain statement" standard under Civil Rule 8(a)(2).  Civil Rule 9(b), incorporated into the Bankruptcy Code by Rule 7009, requires that a plaintiff must state "with particularity the circumstances constituting fraud . . . ."  The Ninth Circuit has provided guidance for the "with particularity" requirement by stating that to comport with Civil Rule 9(b) the complaint must (1) specify the averred fraudulent representations; (2) aver the representations were false when made; (3) identify the speaker; (4) state when and where the statements were made; and (5) state the manner in which the representations were false and misleading.  Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991).

Because fraud encompasses a wide variety of circumstances,

-17-

the requirements of Civil Rule 9(b) — like Civil Rule 8(a)(2) — should provide all defendants with sufficient information to formulate a response. Thus, the complaint cannot lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Haskin v. R.J. Reynolds Tobacco Co., 995 F.Supp. 1437, 1439 (M.D. Fla. 1998). Moreover, the plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989).

**2.  The Standards For Dismissal Under Civil Rule 12(b)(6)**

The above rules which set forth the pleading standards overlie the standards for deciding motions to dismiss a complaint under Civil Rule 12(b)(6).

When ruling on a motion to dismiss under Civil Rule 12(b)(6), we are instructed first to separate the factual and legal elements of a claim. In examining the factual elements of a claim, "we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Movsesian, 629 F.3d at 905 (quoting Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)(quotation marks omitted)). We then must determine whether the facts alleged are sufficient to show that the plaintiff has a plausible claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

-18-

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

Twombly, 550 U.S. at 555. Determining whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950. In the end, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); Cooke, Perkiss & Liehe, 911 F.2d at 244. We will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

With respect to the legal elements of a claim, our mandate is different. We are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

Moreover, if the allegations show that relief is barred as a matter of law, the complaint is subject to dismissal. Jones v. Bock, 549 U.S. 199, 215 (2007)(dismissal appropriate under Civil Rule 12(b)(6) if the allegations show that relief is barred by the applicable statute of limitations); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74-75 (2d Cir. 1998)

-19-

(affirmative defense of official immunity may be resolved by Civil Rule 12(b)(6) if clearly established by the allegations within the complaint).

Finally, although the independent threshold pleading requirements under Civil 9(b) support dismissal apart from Civil Rule 12(b)(6), the Ninth Circuit has stated that "[a] motion to dismiss a complaint or claim 'grounded in fraud' under [Civil] Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).

### 3. The Merits

Here, our review of debtors' TAC shows that it was woefully deficient with respect to the pleading requirements under Civil Rules 8(a)(2) and 9(b). First, many of the claims for relief do not contain a short and plain statement showing that debtors were entitled to relief. Egregious examples are the eleventh and thirteenth[6] through eighteenth claims for relief. These claims were not contained in the body of the TAC, but in the prayer with no factual allegations whatsoever. Second, in numerous instances, the TAC made allegations of fraud without meeting the particularity requirements under Civil Rule 9(b). No one can tell from reading the TAC which defendant made what misrepresentation or even what the alleged misrepresentations were. Third, references in most of the claims for relief are to

---

[6] There was no twelfth claim for relief in either the body or prayer of the TAC.

-20-

"Defendants" generally,[7] lumping them all together without alleging which defendants were liable to debtors for which wrongs. In short, this manner of pleading does nothing to apprise the respective Appellees of which allegations might apply to them. As a result, trying to sort out who said or did what, where, or when is a pointless exercise. Therefore, at the most fundamental level, the TAC failed to provide the "fair notice" to Appellees which is required under the Civil Rules for pleading.

Next, as apparent from the face of the complaint, many of debtors' claims were based on California state law causes of action which were time-barred.

Finally, as discussed below, with respect to the second claim for relief, the trustee's affirmative defense of quasi-judicial immunity was established by the allegations within the TAC.

These numerous deficiencies, taken together, themselves demonstrate there is no basis for overturning the bankruptcy court's decision in these appeals. We may affirm on any ground supported by the record. Shanks, 540 F.3d at 1086.

## First Claim For Relief

Debtors' first claim for relief sought various damages and costs against "Defendants" for fraud, deceit, misrepresentation and constructive fraud against a fiduciary. The bankruptcy court construed debtors' first claim for relief as a state law

_____

[7] Similar to the bankruptcy court, we liberally construe debtors' reference to "Defendants" in the various claims for relief as including Appellees.

fraud claim. We do as well.

Civil Rule 9 (b) requires that fraud be pled with particularity; general and conclusory allegations do not suffice. A liberal reading of this claim makes it painfully clear that debtors did little more than set forth conclusory allegations as against all "Defendants". Nowhere did debtors specify the averred fraudulent representations, identify the speaker, state when and where the statements were made, and state the manner in which the representations were false and misleading. Accordingly, the bankruptcy court properly dismissed debtors' fraud claim against Appellees on Civil Rule 9(b) grounds.

California statutes of limitations govern debtors' fraud claim for relief which is based on non-bankruptcy California law. § 108(a); Cal. Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1403 (9th Cir. 1995). Cal. Code Civ. Proc. ("CCP") § 338 sets forth a three year statute of limitations for fraud. Under CCP § 338(d), a cause of action for fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

Here, debtors' TAC shows that they filed the Modular Home Litigation on July 26, 1999, which was based, in part, on the same facts giving rise to their fraud claim in the TAC (¶ 54). Therefore, debtors' fraud claim accrued no later than July 26, 1999. Three years from that date would have been July 26, 2002. Since debtors' complaint was not filed until January 2, 2008, their fraud claim is time-barred unless some exception applies.

Debtors do not argue on appeal that the "rule of discovery"

-22-

applies to toll the statute of limitations. Moreover, the TAC does not reveal any facts that showed, among other things, debtors' lack of knowledge or lack of means of obtaining knowledge of the facts constituting the alleged fraud. See Weir v. Snow, 210 Cal. App. 2d 283, 292 (Cal. Ct. App. 1962)(the plaintiff must plead and prove the facts showing: lack of knowledge; lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); and how and when he did actually discover the fraud or mistake). Therefore, the bankruptcy court correctly ruled that debtors' fraud claim was time-barred.

## Second Claim For Relief

Debtors' second claim for relief sought various damages and costs against "Defendants" for fraudulent inducement/rescission. Our reading of the TAC comports with the bankruptcy court's interpretation that this claim is a state law claim for rescission of a written contract based on fraud. A claim for rescission based on fraud must be pled with particularity just like a claim for fraud. 4 Witkin, Cal. Proc. 5th, § 544 at p. 621 (2008).

Debtors' allegations are general and conclusory with respect to Appellees. Debtors' fail to identify the written contract(s) they were referring to and which Appellees were parties to the alleged contract(s). Debtors refer to "Defendants' express representations," but nowhere do they state what those representations were or who made them. Thus, debtors' allegations did not give Appellees fair notice of the claims against them nor do the allegations allow us to

-23-

determine, on the facts pled, that there is any foundation for debtors' charges of fraud. Accordingly, the bankruptcy court properly dismissed this claim on Civil Rule 9(b) grounds.

Alternatively, debtors' claim based on the rescission of a contract in writing was barred by the four-year statute of limitations under CCP § 337(3).[8] Under CCP § 337(3), the limitations period begins to run from the date when the facts occurred that entitled the aggrieved party to rescind. Since the Modular Home Litigation debtors filed on July 26, 1999, was based, in part, on the same facts giving rise to debtors' rescission claim, this claim accrued no later than July 26, 1999. Four years from that date is July 26, 2003. Debtors did not file the adversary proceeding until January 2, 2008. Therefore, this claim was time-barred unless an exception applied.

Again, debtors do not contend on appeal that the "rule of discovery" applies to toll the statute of limitations. Nowhere in the TAC did debtors plead any facts that showed, among other things, their lack of knowledge or lack of means of obtaining knowledge of the facts constituting the fraud. See Weir, 210 Cal. App. 2d at 292. We thus conclude the bankruptcy court correctly ruled that debtors' second claim for relief was time-barred.

Dismissal was also appropriate as to the Trustee on this claim for relief because the doctrine of quasi-judicial immunity

---

[8] Here, because the claim was so ambiguous, the bankruptcy court applied the lengthier four-year limitation period rather than the three year period for fraud.

-24-

applied. "Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order." Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989); Nilsen v. Neilson (In re Cedar Funding, Inc.), 419 B.R. 807, 820 (9th Cir. BAP 2009). Debtors allege that "Defendants" made misrepresentations to them regarding a compromise motion that was filed and ultimately granted by court order in the bankruptcy proceeding. Debtors also alleged that the Trustee "knowingly, deliberately, [and] willfully committed fraud upon the court to sell [debtors'] residence." Not only have debtors failed to plead their fraud upon the court with particularity as required under Civil Rule 9(b), but the alleged fraud occurred within the Trustee's scope of authority as chapter 7 trustee for debtors' estate. Therefore, the bankruptcy court correctly dismissed this claim as to the Trustee on the additional ground that he was shielded from liability under the derived quasi-judicial immunity defense.

**Third Claim For Relief**

Debtors' third claim for relief sought various damages and costs against "Defendants" for defamation/libel/slander. Under California law, an essential element of defamation, whether alleged as an action for libel or slander, is a showing of a false statement of fact. Cort v. St. Paul Fire & Marine Ins. Cos., 311 F.3d 979, 985 (9th Cir. 2002)(citing Savage v. Pac. Gas & Elec. Co., 21 Cal. App. 4th 434, 444 (Cal. Ct. App. (1993)(internal quotation marks omitted)).

Our review of the TAC shows that debtors failed to allege that any of Appellees made a false statement of fact through an

-25-

oral statement, writing, picture, or other fixed representation. Instead, the TAC only uses conclusory terms like "fraud," "slander," or "[a] lie" without alleging any facts showing the precise statements that were made or that they were false. The allegations in this claim for relief fall far short of providing fair notice to Appellees. Accordingly, the bankruptcy court properly dismissed this claim for relief for failure to state a claim against Appellees.

**Fourth Claim For Relief**

The fourth claim for relief sought various damages and costs against "Defendants" for breach of written contract. Under California law, a breach of contract action is comprised of the following: (1) existence of a contract; (2) plaintiffs' performance or excuse of nonperformance; (3) defendants' breach; and (4) damages to plaintiffs as a result of the breach. Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 (Cal. Ct. App. 2004).

Debtors allege that they entered into written contracts with "Defendants" on June 21, 1998, and again on June 1, 2004. Debtors refer to a contract that they signed on May 21, 1998, with TCMHS to purchase a new modular home, but this contract was entered into a month earlier than the date stated in this claim for relief. We could not find any facts alleged that pertained to a written contract with Appellees on either date referenced in this claim for relief. Further, even if there were written contracts in existence which Appellees could identify through the allegations in the TAC, debtors fail to allege facts which could be reasonably construed to match up with the remaining

elements of their claim. Nowhere did debtors allege their performance or excuse for non-performance, and they failed to allege which contract terms any of Appellees allegedly breached. Therefore, we conclude that the bankruptcy court properly dismissed this claim for relief because it failed to state a claim against Appellees.

## Fifth Claim For Relief

The fifth claim for relief sought various damages and costs against "Defendants" for breach of an oral or implied contact. Under California law, the elements to establish an implied contract are the same as those for an express contract. See Div. of Labor Law Enforcement v. Transpacific Transp. Co., 69 Cal. App. 3d 268, 277 (Cal. Ct. App. 1977). In other words, a plaintiff must show offer, acceptance, and consideration as well as a meeting of the minds. Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc., 486 F.3d 989 (7th Cir. 2007). The existence of an implied contract turns on the intent of the parties. Tony v. Sec. Experts, 20 F.3d 967, 971 (9th Cir. 1994).

Debtors allege that on June 1, 2004, they and "Defendants" entered into an oral and implied contract in the County of El Dorado to be performed in the County of El Dorado and in the United States Bankruptcy Court in the County and City of Sacramento, regarding the Cal Vet contract. Debtors further allege that "Defendants" have breached the oral and/or implied contracts with debtors. Yet, debtors set forth no facts showing that Appellees entered into an oral or implied contract with debtors; there are no allegations showing an offer, acceptance

-27-

or consideration, or a meeting of the minds. Paragraphs thirty-five through seventy-one of the TAC fail to mention any oral or implied contract made on June 1, 2004. Instead, the TAC refers to a settlement agreement that was reached between Cal Vet and debtors, but no terms of the purported settlement agreement are alleged. We agree with the bankruptcy court that these allegations, taken together, are conclusory. We are not required to assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Papasan, 478 U.S. at 286; see also, Ove v. Gwinn, 264 F.3d 817, 821 (9th Cir. 2001)(explaining that conclusory legal allegations and unwarranted inferences are insufficient to defeat a motion to dismiss). Therefore, we conclude that the bankruptcy court properly dismissed this claim for relief for failure to state a claim against Appellees.

## Sixth Claim For Relief

The sixth claim for relief sought various damages and costs against "Defendants" for breach of fiduciary duties. Under California law, to state a claim for breach of fiduciary duty, a plaintiff must show the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. Thomson v. Canyon, 198 Cal. App. 4th 594, 604 (Cal. Ct. App. 2011)(citations omitted).

Even under the most liberal reading of this claim for relief, the TAC does not allege any facts to support debtors' theory as to the creation of a fiduciary relationship with any of Appellees. The TAC simply alleges that "Defendants" owed fiduciary duties to plaintiffs as their clients. Debtors did

-28-

not allege any facts showing that they were clients of Appellees, that an agency relationship was created between debtors and Appellees, or that debtors otherwise reposed trust and confidence in Appellees to create a fiduciary relationship. Wolf v. Sup. Court, 107 Cal. App. 4th 25, 29 (2003). We will not assume that debtors can prove facts which they have not alleged. Associated Gen. Contractors of Cal., Inc., 459 U.S. at 526. Moreover, debtors' allegations are conclusory. We are not required to assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Papasan, 478 U.S. at 286. Therefore, we conclude that the bankruptcy court properly dismissed this claim for relief for failure to state a claim against Appellees.

### Seventh Claim For Relief

The seventh claim for relief sought various damages and costs against "Defendants" for negligence. The bankruptcy court construed this claim as one for negligent performance of professional services. We do as well.

A cause of action for professional negligence is generally governed by the two-year statute of limitations under CCP § 339(1) for an "action upon a contract, obligation or liability not founded upon an instrument of writing." Thomson, 198 Cal. App. 4th at 607 (stating that the shorter two-year statute of limitations of CCP § 339(1) has been consistently applied to a range of professional negligence actions from accountants to real estate appraisers). A cause of action in tort for professional negligence does not accrue until the plaintiff both (1) sustains damage and (2) discovers, or should discover, the

-29-

negligence. Slavin v. Trout, 18 Cal. App. 4th 1536, 1540 (Cal. Ct. App. 1993).

This claim for relief refers to the Cal Vet loan and, in general, the TAC alleges that the negligent performance of professional services occurred on or before the commencement of the Modular Home Litigation on July 26, 1999. Debtors' professional negligence claim for relief was initiated in January 2, 2008, more than nine years after their negligence claim accrued on July 26, 1999. Therefore, the bankruptcy court correctly ruled that this claim for relief was time-barred.

**Eighth Claim For Relief**

The eighth claim for relief seeks a variety of forms of relief, including damages, an accounting, declaratory relief, injunctive relief, and damages against the "Defendants".

California law recognizes accounting as a remedy for fiduciary breach. However, as stated above, debtors alleged no facts showing that Appellees had a fiduciary relationship with them.

An action for declaratory relief requires the plaintiff to demonstrate the existence of an actual controversy regarding the legal rights of the parties. McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 800 (Cal. Ct. App. 2008). Where there is an accrued cause of action for a past breach of contract or other wrong, declaratory relief is inappropriate. Canova v. Trs. of Imperial Irrigation Dist. Emp. Pension Plan, 150 Cal. App. 4th 1487, 1497 (Cal. Ct. App. 2007). If a party has a fully matured cause of action for money, the party must seek damages rather than declaratory relief. Id. Here, the

-30-

assertions in the TAC including the alleged breach of contract, fraud, slander, and fraudulent recording, have already occurred. Thus, we agree with the bankruptcy court that debtors must seek redress through a claim for money damages.

Further, debtors are not entitled to injunctive relief. Under California law, "injunctive relief is a remedy and not, in itself, a cause of action . . . ." McDowall v. Watson, 59 Cal. App. 4th 1155, 1159 (Cal. 1997). Moreover, the TAC does not allege any facts which would entitle them to the "remedy" of injunctive relief. Debtors allege that they will continue to suffer irreparable injury that cannot be adequately remedied at law unless "Defendants," and their officers, agents, and employees and all other persons acting in concert with them are enjoined from engaging in any further conduct and all other conduct which would cause or tend to cause plaintiffs damages or injuries. However, as noted by the bankruptcy court, debtors fail to specify the conduct that they want enjoined and merely recite the consequences if the unspecified conduct is not enjoined. Likewise, debtors fail to specify which of the Appellees they wish to enjoin.

Debtors also request various types of damages, including punitive damages under Cal. Civ. Code § 3294, in this claim for relief. Their request for damages is clearly duplicative. They have already alleged entitlement to various damages based on their assertions that Defendants committed negligence, slander, libel, and fraud. These allegations are cast as separate claims in the TAC and those claims each seek various types of damages, including punitive damages.

For all these reasons, we conclude the bankruptcy court properly dismissed this claim for relief against Appellees.

### Ninth Claim For Relief

The ninth claim for relief seeks various damages and costs against "Defendants" for intentional infliction of emotional distress. Under California law, the elements of the tort of intentional infliction of emotional distress include the following: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. <u>Davidson v. City of Westminster</u>, 32 Cal.3d 197, 209 (Cal. 1982).

There are no facts in the TAC matching the elements for the tort of intentional infliction of emotional distress. The TAC fails to mention any extreme and outrageous conduct of Appellees, fails to mention any facts showing that Appellees performed such conduct intentionally or with reckless disregard of the probability of causing emotional distress, and other than debtors' conclusory statements, fails to allege facts showing that debtors suffered severe emotional distress as a result. We will not assume that debtors can prove facts which they have not alleged. <u>Associated Gen. Contractors of Cal., Inc.</u>, 459 U.S. at 526.

Moreover, debtors' allegations in the ninth claim for relief constitute insufficient legal conclusions and, therefore, fail to state a claim for relief. Thus, the bankruptcy court

-32-

properly dismissed this claim for relief against Appellees.

## Tenth Claim For Relief

The tenth claim for relief seeks various damages and costs against "Defendants" for negligent infliction of emotional distress. In California, negligent infliction of emotional distress is a "species of negligence," not an independent tort. Lawson v. Mgmt. Activities, Inc., 69 Cal. App. 4th 652, 656 (Cal. Ct. App. 1999). In that regard, the traditional elements of negligence law come into play — duty, breach of duty, causation, and damages. Id. at 657. Further, in negligence cases based on emotional distress, California courts have required "something more than foreseeability . . . to raise a duty of care . . . ." Krupnick v. Hartford Accident & Indemnity Co., 28 Cal. App. 4th 185, 202 (Cal. Ct. App. 1994).

Debtors allege that "Defendants" negligently and carelessly failed to satisfy their duties, causing harm to debtors. These allegations are nothing more than insufficient conclusory allegations. Nowhere do debtors allege that Appellees owed them a duty of care or whether such a duty was based on debtors' relationships with Appellees or arose as a matter of law. Accordingly, debtors' TAC fails to state a claim for negligent infliction of emotional distress.

Further, because the gravamen of this claim for relief is one of professional negligence, the two-year statute of limitations in CCP § 339(1) applies. The TAC states that the negligent infliction of emotional distress occurred on or before debtors' commencement of the Modular Home Litigation on July 26, 1999. Therefore, their negligent infliction of emotion distress

claim accrued no later than July 26, 1999 and would have been barred if not filed by July 25, 2001.  Debtors initiated this claim for relief on January 2, 2008 and, therefore, this claim is time-barred.  For these reasons, the bankruptcy court properly dismissed this claim for relief against Appellees.

**Eleventh, Thirteenth Through Eighteenth Claims For Relief**

The body of the TAC contained no eleventh or thirteenth through eighteenth claims for relief.  Rather, the prayer of the TAC referred to these claims.  The eleventh claim for relief sought various damages and costs against defendants Kohls, Jones Sommer LLP, Jamie M. Errecart, Schools Credit Union, Cal Vet, Hansen Culhane, and  Ronald L. Melluish for violation of § 362(a) and (h).  The thirteenth claim for relief seeks various damages and costs against Cal Vet, the Department of Housing and Community Development, and the County of El Dorado, for violation of Health and Safety Code § 18000, et seq.  The fourteenth claim for relief seeks various damages and costs against "Defendants" for breach of duty of good faith and fair dealing.  The fifteenth claim for relief seeks various damages and costs against "Defendants" for malicious prosecution.  The sixteenth claim for relief seeks various damages and costs against "Defendants" for fraudulent claims under §§ 152 and 3571.  The seventeenth claim for relief seeks various damages and costs against "Defendants" for declaratory relief.  And, the eighteenth claim for relief seeks various damages and costs against "Defendants" for injunctive relief.

It appears that debtors' only reference to these claims was in the caption of their TAC and the prayer.  These cursory

-34-

references were certainly not enough to constitute an articulation of facts that demonstrate an entitlement to relief under Iqbal. Moreover, none of these claims contained any facts to put Appellees on notice of the asserted claims against them. Thus, the bankruptcy court properly dismissed these claims for relief against Appellees.

**C. The Bankruptcy Court Did Not Abuse Its Discretion In Dismissing The TAC As To Appellees With Prejudice**

Debtors were given two chances to amend their complaint, accompanied by detailed instructions from the court. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)(noting that a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment). Despite receiving instructions from the bankruptcy court as to the nature of the complaint's deficiencies and how they might be corrected, debtors' TAC was once again woefully deficient.

Under these circumstances, we conclude that the bankruptcy court did not abuse its discretion in dismissing the TAC as to Appellees without leave to amend.

**D. Outstanding Matters**

On July 19, 2011, H&K filed an objection to debtors' reply brief, arguing that debtors raised factual issues that were not raised in their opening brief. H&K contends that those issues should be stricken or not considered because they were abandoned or waived. In response, debtors filed a motion for relief under Civil Rule 60(b)(3) on the grounds that statements made in H&K's pleading amounted to "fraud upon the court."

We agree with H&K that debtors' reply brief raises new arguments with respect to allegations of fraudulent activity by H&K and alleged potential conflict of interest. We do not consider those arguments. See Ghahremani v. Gonzales, 498 F.3d 993, 997-98 (9th Cir. 2007)(issues not addressed in an opening brief are deemed waived). Further, we find no merit to debtors' motion under Civil Rule 60(b)(3), as the rule is inapplicable. Therefore, the motion is denied.

## VI. CONCLUSION

Having determined that there is no basis for reversal, we AFFIRM each of the orders on appeal.